In re Boris SHTEYSEL, Debtor.

Eugenia SHTEYSEL, Plaintiff,

v.

Boris SHTEYSEL, Defendant.

Bankruptcy No. 95–27004–JES.
Adversary No. 96–2064.

United States Bankruptcy Court,
E.D. Wisconsin.

May 18, 1998.

Sharon R. Long, Milwaukee, WI, for plaintiff.

Christopher L. Zimmerman, Milwaukee, WI, for defendant.

## DECISION

JAMES E. SHAPIRO, Chief Judge.

The plaintiff, Eugenia Shteysel ("Eugenia"), has objected to the dischargeability of an obligation in the amount of $22,500 due to her from her former spouse, defendant, Boris Shteysel ("Boris"). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

Eugenia alleges that this obligation is non-dischargeable under all of the following four exceptions to discharge: 11 U.S.C. § 523(a)(2)(A), (5), (6), and (15). A trial was held on March 12, 1998. At the conclusion of Eugenia's evidence, the court granted Boris' motion to dismiss the counts arising under §§ 523(a)(2)(A) and 523(a)(5). *Matter of Mayer v. Spanel International Ltd.*, 51 F.3d 670 (7th Cir.1995), cert. denied, 516 U.S. 1008, 116 S.Ct. 563, 133 L.Ed.2d 488 (1995), declares that all of the following elements must be established under § 523(a)(2)(A):

1.  Creditor must prove that the debtor obtained the money through false representations, which the debtor knew to be false or made with such reckless disregard for the truth as to constitute willful misrepresentation.

2.  Debtor possessed intent to deceive.

3.  Creditor actually relied on the false representation.

*Matter of Mayer*, 51 F.3d at 673.

Because the first element was clearly lacking, the § 523(a)(2)(A) count was dismissed.

Eugenia's counsel acknowledged that the obligation in question constitutes a division of property and not maintenance. Obligations involving property division do not fall within § 523(a)(5). *In re Sateren*, 183 B.R. 576, 581 (Bankr.D.N.D.1995). Accordingly, the § 523(a)(5) count was also dismissed.

This left for the court's consideration the remaining alleged exceptions to discharge under §§ 523(a)(6) and 523(a)(15).[1]

## FACTS

Eugenia and Boris were married on July 28, 1979 in Milwaukee, Wisconsin. No children were born to or adopted by them. On April 1, 1992, Eugenia commenced an action for divorce against Boris in Milwaukee County as Case No. 93–FA–929–569. On April 2, 1992, Boris was served with the divorce papers.

On April 27, 1992, Boris wrote a check for $36,000 payable to Joseph Shteysel, his son from a previous marriage. On May 5, 1992, Boris wrote a second check for $9,000 to Joseph Shteysel. These checks, totalling $45,000, were the proceeds of various retirement, savings and investment accounts, which Boris held in his sole name and which he liquidated soon after being served with the divorce papers. The checks were then used by Joseph Shteysel to purchase a truck for use in a business he owned and operated known as Agresco Oil Company, Inc. This company is located in Northridge, California,

---

1.  § 523. **Exceptions to discharge.**
     (a) A discharge under section 727, ... of this title does not discharge an individual debtor from any debt—
         (6) for willful and malicious injury by the debtor to another entity or to the property of another entity;
         (15) not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless—

   (A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor and, if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or
   (B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor.

and is engaged in the delivery of oil to refineries.

On January 19, 1995, a judgment of divorce was granted to the parties. As part of the judgment of divorce, the court ordered that 1/2 of the $45,000, which Boris had turned over to his Son and which were found to constitute marital property, must be paid back to Eugenia within 60 days from the date of the trial or, in the alternative, Boris would be held in contempt of court. At this January 19, 1985 hearing, the presiding judge, The Honorable Gary A. Gerlach, declared

> I'm satisfied that [Boris] has intentionally dissipated these funds from the marital estate for the purpose of avoiding sharing of any of the marital assets.... I'm satisfied these funds were transferred to his son's company solely for the purpose of avoiding a division of any of the marital assets.... The assets here include the $45,000 which were transferred by Mr. Shteysel several days after the divorce action was commenced. Half of this amount is to be awarded to Mrs. Shteysel. $22,500 is to be paid to her. You have 60 days to pay her that amount Mr. Shteysel. Judgment in that amount is going to be entered against you. If it is not paid—and you also could be found in contempt of court for not transferring those assets.

Boris appeared *pro se* at the January 19, 1995 hearing, although he previously was represented by counsel in this divorce action.

On October 2, 1995, a hearing was held on Eugenia's motion for contempt against Boris due to his failure to remit to Eugenia the $22,500 as previously ordered. Judge Gerlach granted Eugenia's motion for contempt and sentenced Boris "to 120 days in the House of Corrections and shall remain there until he pays the judgment of $22,500 to (Eugenia) or makes some other arrangements which are satisfactory to (Eugenia)" (Exhibit 7). No portion of the $22,500 has ever been paid to Eugenia by Boris. On November 1, 1995, Boris filed a voluntary petition in bankruptcy under chapter 7. On January 26, 1996, Eugenia commenced this adversary proceeding against Boris.

### SECTION 523(a)(15)

Section 523(a)(15), enacted as part of the Bankruptcy Reform Act of 1994, pertains to a division of property. Under this section, obligations arising from a property division are nondischargeable if.

1. The debtor has the ability to pay and
2. The detriment to the non-debtor spouse outweighs the benefit of a discharge to the debtor (frequently referred to as the "balancing test").

Should the court find a lack of ability on the part of the debtor to pay, § 523(a)(15) does not apply and the court need not then address the "balancing test" requirement.

■ At the outset of this trial, the court informed the attorneys for Eugenia and for Boris that the issue of who has the burden of proof is unsettled with respect to § 523(a)(15). The court then stated, for purposes of this trial, that the burden of proof is initially upon Eugenia to establish that the debt was not of the kind described in § 523(a)(5) and was incurred in the course of a divorce. If Eugenia meets this burden, the burden then shifts to Boris to prove either:

1. inability to pay or
2. the discharge of the debt would result in a benefit to Boris which outweighs the detrimental consequences to Eugenia.

The court also determined that a debtor's income and expenses, for purposes of § 523(a)(15), are measured at the time of trial. *In re Jodoin*, 209 B.R. 132, 142 (9th Cir.BAP1997), *In re Johnson*, 212 B.R. 662, 667 (Bankr.D.Kan.1997). Eugenia. established that this debt arose out of the divorce action. However, based upon the testimony presented, there is very little, if any, disposable income available to Boris to enable him to pay the $22,500 obligation. His sole source of income is his social security check of $660 per month. He testified, and his bankruptcy schedule of expenditures confirmed, that his monthly expenses are as follows:

| | |
|---|---|
| Rent | $188 |
| Telephone | 30 |
| Food | 200 |
| Clothes | 50 |
| Medical & Dental | 50 |
| Transportation | 50 |
| Miscellaneous | 50 |
| Total | $618 |

These claimed expenses are realistic and support his testimony that, at the end of each month, he has at most "$50 left over." This court, therefore, concludes that Boris lacks the ability to pay this obligation. Because Boris lacks the ability to pay, the court need not consider the balancing test of § 523(a)(15)(B). By demonstrating his inability to pay, Boris has successfully rebutted the § 523(a)(15) exception to discharge alleged by Eugenia.

### SECTION 523(a)(6)

Section 523(a)(6) excepts from discharge debts "for willful and malicious injury by the debtor to another entity or to the property of another entity." The creditor must prove, by a preponderance of the evidence under § 523(a)(6), that the debtor's conduct was both willful and malicious. *Grogan v. Garner*, 498 U.S. 279, 287, 111 S.Ct. 654, 659, 112 L.Ed.2d 755 (1991). "Willful" has recently been interpreted by the United States Supreme Court as meaning intent to cause injury, not merely an intentional act that leads to injury. *Kawaauhau v. Geiger*, —— U.S. ——, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). "Malicious" means "in conscious disregard of one's duties or without just cause or excuse." *Matter of Thirtyacre*, 36 F.3d 697, 700 (7th Cir.1994). Whether an actor behaved willfully or maliciously is ultimately a question of fact reserved for the trier of fact. *Thirtyacre*, 36 F.3d at 700.

This court is satisfied that the conduct on the part of Boris was both willful and malicious within the meaning of § 523(a)(6). This case rises to the level of blatant and egregious conduct by Boris. It is the outgrowth of what appears to have been a very stormy marriage.

Boris' actions in liquidating his retirement, savings and investment accounts shortly after being served with the divorce papers and then transferring the proceeds to his son in California were done with a clear objective in mind: to keep these assets out of the reach of Eugenia. His actions were part of an orchestrated scheme by him to deprive Eugenia of any share in these assets, which otherwise might be awarded to her in the divorce action. Judge Gerlach recognized this, and this court does so likewise.

Although Boris may not have been under any restraining order from the divorce court when he disposed of his assets and then transferred the cash proceeds to his son, he certainly knew that these actions would deprive his wife of immediate possession of these assets. Judge Gerlach subsequently found that these assets were marital assets. Perhaps Boris truly believed in his mind that he, and he alone, was entitled to the assets free of any claim by Eugenia. This is a matter of speculation. However, his conduct in quickly transferring the cash proceeds to his son after the start of the divorce action reflected a fear on his part that the divorce court might otherwise order that a portion of these assets be awarded to Eugenia.

Moreover, Boris' actions in violating Judge Gerlach's order to pay the $22,500 to Eugenia was willful and malicious conduct on his part. In *In re Blankfort*, 217 B.R. 138 (Bankr.S.D.N.Y.1998), the court found that a debtor's persistent violations of district court orders were "blatant and willful" and fell within the § 523(a)(6) exception. In making this ruling, the court declared:

> A person so persists unabated in unlawful conduct, after the entry of a court order specifically and unambiguously enjoining such conduct, and who continues her unlawful conduct in violation of further orders of the court, cannot be characterized as the "honest but unfortunate" debtor whom Congress intended to favor with the extraordinary relief of a discharge in bankruptcy. Contempt of court strikes at the fabric of the judicial system.

Although, as noted in *Thirtyacre*, 36 F.3d at 700, ill will is not a necessary element under § 523(a)(6), it most certainly exists in this case.

What Boris was trying to accomplish is not novel. It hasn't worked in other cases, and it will not work here. In *In re Sateren*, 183 B.R. 576 (Bankr.D.N.D.1995), the state divorce court had awarded a

In *Reid,* 149 B.R. at 672, the court invoked collateral estoppel.[2] In the case at bar, this court also believes that collateral estoppel applies. In *Klingman v. Levinson,* 831 F.2d 1292, 1295 (7th Cir.1987), the Seventh Circuit declared that collateral estoppel applies provided the following four requirements are met:

1. The issue sought to be precluded must be the same as that involved in a prior action.

2. The issue must have been actually litigated.

3. The determination of the issue must have been essential to the final judgment.

4. The party against whom estoppel is invoked must be fully represented in the prior action.

The first three of these requirements were incontrovertibly met in the state divorce action between Boris and Eugenia. This court recognizes that Boris appeared *pro se* when the divorce was granted on January 19, 1995. However, up to that point he had been represented by counsel in the divorce case. He was also represented by counsel in the divorce action subsequently at the October 2, 1995 contempt hearing. The absence of counsel at the time the divorce was granted does not lessen the collateral estoppel effect of a state court judgment. *See Klemens v. Wallace,* 62 B.R. 91, 92 (D.N.M.1986), aff'd, 840 F.2d 762 (10th Cir.1988); *In re Bursack,* 65 F.3d 51 (6th Cir.1995); and *In re Tsamasfyros,* 940 F.2d 605 (10th Cir.1991). Recently, in *In re Wilson,* 216 B.R. 258 (Bankr. E.D.Wis.1997), the debtor was not represented at an evidentiary hearing before an administrative law judge who had made certain findings. Judge McGarity, nonetheless, invoked collateral estoppel, finding that the litigant had the opportunity to litigate the issue, declaring:

It would be a poor use of adjudicative resources to allow an individual to conduct an extensive hearing before an administrative agency without an attorney, proceed through the state court review, and then litigate the same facts in the bankruptcy court if he did not like the result.

But even if collateral estoppel is not invoked here, the result is the same. This court concludes, based upon the evidence presented and without the need to resort to collateral estoppel, that both willfulness and maliciousness were established.[3]

In (*In re Cicero,* 28 B.R. 480, 484 (Bankr. E.D.Wis.1983)), this court observed that it is extremely difficult to probe into the inner processes of a party's mind in order to establish such party's intention. Such intent can only be inferred from a totality of the circumstances and necessarily involves a consideration of credibility. Here, this court has had an opportunity to carefully observe Boris' credibility. It concludes that he was not a credible witness. He was evasive. He frequently avoided answering key questions by saying: "I don't remember" or "I don't know." He offered two inconsistent explanations for his actions in liquidating his assets and then transferring the proceeds to his son. At one point, he stated it was done " to protect the environment" which he testified is "more important than money." This explanation has a hollow ring to it. Boris is not independently wealthy, and his finances did not afford him the luxury of making such a noble gesture. In view of this, together with the sequence of events (his liquidation of assets and transfer of the cash proceeds to his son soon after the divorce was commenced), this explanation is rejected. Boris then proceeded to provide another reason for his actions. He testified that he liquidated his holdings for investment purposes. Yet, Boris has never received any return on his so-called "investment" since transferring $45,000 to his son. Nor has Boris ever asked

---

2. In Wisconsin, collateral estoppel is now referred to as "issue preclusion." For purposes of this decision, "collateral estoppel" and "issue preclusion" wherever used are interchangeable.

3. At trial, counsel for Boris objected to the admission into evidence of photocopies of the exhibits because they were not originals. The court overruled this objection because, in its October 20, 1997 final pretrial order, it imposed a deadline of March 5, 1998 to object to exhibits, and no objection was made. In addition, no genuine issue exists as to authenticity of the original exhibits. *See* Fed.R.Evid. 1003.

his son about the status of his "investment" despite the fact that Boris and his son are regularly in communication with each other. This second attempt to justify his actions is also repudiated. Boris further claimed that, when he liquidated his assets and transferred the cash proceeds to his son, he lacked knowledge of the divorce. He claimed he was never served during that time period with any divorce papers. An affidavit of service by a process server received into evidence reflects that Boris was served with the divorce papers on April 2, 1992 (Exhibit 1). This court finds that Boris' contention in this regard is incredible.

What happened here was a carefully orchestrated plan by Boris to deprive Eugenia of her share in the marital property. The $22,500 debt of Boris to Eugenia is nondischargeable under § 523(a)(6).

This decision shall constitutes this court's findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052 and Rule 52 of the Federal Rules of Civil Procedure.