**In re Ralph HEYNE, Debtor.**

**Marylin Heyne, Plaintiff,**

**v.**

**Ralph Edwin Heyne, Defendant.**

**No. 00–3155.**

United States Bankruptcy Court,
N.D. Ohio.

Feb. 13, 2002.

Randy L. Reeves, Lima, OH, for plaintiff.

Steven L. Diller, Van Wert, OH, for defendant.

### DECISION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court after a Trial on the Plaintiff's Complaint to Determine Dischargeability. In attendance at the Trial were Randy Reeves as counsel for the Plaintiff, Marylin Heyne; and the Defendant/Debtor, Ralph Heyne, who was unrepresented by legal counsel. With respect to the Plaintiff's Complaint, the primary issue raised by the Plaintiff was

whether the doctrine of collateral estoppel (also known as issue preclusion) applied so as to prevent the Debtor from discharging a marital debt under one of three exceptions to dischargeability set forth in the Bankruptcy Code: 11 U.S.C. § 523(a)(2)(A) (a debt arising from a false pretense, a false representation, or actual fraud); 11 U.S.C. § 523(a)(6) (a debt arising from a willful and malicious injury); or 11 U.S.C. § 523(a)(15) (a debt arising from a property settlement in a divorce or separation).

As it relates to the doctrine of collateral estoppel, the facts relevant to the Plaintiff's Complaint are as follows:

—The Plaintiff and the Debtor were married for 34 years. While married both the Plaintiff and the Debtor engaged in extensive farming related activities.

—On July 1, 1991, the Plaintiff filed a Complaint for Divorce.

—As a part of their divorce proceedings, a judgment entry was filed restraining the Debtor from in any way acquiring possession or disposing of any property related to the Parties' farming related activities. However, in violation of this Order, the Debtor disposed of a significant amount of assets relating to the Parties' farming operations. Thereafter, on May 15, 1992, the Debtor was found in contempt for failing to comply with the court's order. The Debtor was then fined the sum of $200.00 dollars, but was permitted to purge himself of the contempt charge by filing with the court a written accounting for the assets sold, along with a detailed accounting of the disposition of the proceeds. The Debtor was then further ordered not to dispose of, or in any way alter any assets of the Parties without the written permission of the court. The Debtor, however, did not comply with this order.

—On January 8, 1993, the Referee assigned to the Parties' divorce filed his Report. In this Report, it was stated, in paragraph 11, that:

Defendant has failed to comply with this Court's prior Orders. He has failed to pay the local phone bill, and the electrical bill for the marital residence. He has failed to pay temporary spousal support in the amount of $100 per week from July 5, 1991, through the date of the hearing. He has transferred livestock, grain, and sold the same without permission of the Court. On October 15, 1991, Defendant sold livestock for $12,335.15; on October 17, 1991, he sold crops for $64,000; on October 22, 1991, he sold livestock for $14,558.23; during 1991 he received an additional $44,569 for sale of crops; he received $879 from a neighbor for labor which he has not accounted for; he has received $410 for the sale of hay which he has not accounted for; he has received $3,116.65 for the sale of corn which he has not accounted for; and he has received $5,045 for the Mercer County A.S.C.

—On February 26, 1993, a judgment entry of divorce was entered in the Common Pleas Court of Mercer County, Ohio. In said judgment, the Court's order stated, in part, that:

IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Plaintiff is granted judgment against [Debtor] for the division of assets or liquidation of assets by the [Debtor] contrary to this Court's prior Orders, in the amount of Seventy-two Thousand Four Hundred Fifty Six and 52/100 Dollars (72,456.52), plus interest at the rate of (10%) per annum from the date of the filing of this Entry.

—The Debtor has not made one payment toward this obligation.

—The Debtor no longer engages in any farming related activities. At the time of the Trial held in this matter, the Debtor's sole source of income was derived from social security and working odd jobs.

## LEGAL ANALYSIS

 As set forth above, the issue presented in this case is whether the doctrine of collateral estoppel applies so as to prevent the Debtor from discharging his marital obligation to the Plaintiff. As resolution of this issue involves the determination of whether a particular debt is dischargeable, this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

 The doctrine of collateral estoppel, which is sometimes referred to as "issue preclusion," prevents the same parties or their privies from relitigating facts and issues in a subsequent suit that were fully litigated in a prior suit. *Thompson v. Wing*, 70 Ohio St.3d 176, 183, 637 N.E.2d 917, 923 (1994). It is well established that collateral estoppel principles apply to bankruptcy proceedings and can be used in nondischargeability actions to prevent relitigation of issues that were already decided in a state court. *Murray v. Wilcox (In re Wilcox)*, 229 B.R. 411, 415 (Bankr. N.D.Ohio 1998). However, when applying collateral estoppel principles from a state court judgment to a nondischargeability proceeding, the Supreme Court of the United States has held that the federal common law does not apply. *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 374, 105 S.Ct. 1327, 1328, 84 L.Ed.2d 274 (1985). Instead, in a nondischargeability proceeding in a bankruptcy court must, pursuant to the full faith and credit principles of 28 U.S.C. § 1738[1], give the same issue preclusion effect to a state court judgment as it would be given under that state's law. *Id.* Accordingly, in this case, the Court will apply Ohio's law on collateral estoppel since all the events giving rise to the Plaintiff's Complaint transpired in Ohio.

 Under Ohio law, the doctrine of collateral estoppel is comprised of four elements:

(1) A final judgment on the merits in the previous case after a full and fair opportunity to litigate the issue;

(2) The issue must have been actually and directly litigated in the prior suit and must have been necessary to the final judgment;

(3) The issue in the present suit must have been identical to the issue involved in the prior suit; and

(4) The party against whom estoppel is sought was a party or in privity with a party to the prior action.

*In re Wilcox*, 229 B.R. at 416–17. With respect to these requirements, the Court, given the Debtor's full participation in his divorce proceeding, finds that elements one and four as set forth above have been met. Similarly, considering that specific findings of fact were contained in the state

---

**1.** This section provides, in part, that, "[t]he records and judicial proceedings of any court of any such State, Territory or Possession, or copies thereof, shall be proved or admitted in other courts within the United States and its Territories and Possessions by the attestation of the clerk and seal of the court annexed, if a seal exists, together with a certificate of a judge of the court that the said attestation is in proper form. Such Acts, records and judicial proceedings or copies thereof, so authenticated, shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State, Territory or Possession from which they are taken."

**368**

court order regarding the grounds giving rise to the Debtor's marital debt to the Plaintiff, the Court also finds that the second element of the collateral estoppel test has been met. Accordingly, the Court's remaining analysis will focus solely on the applicability of the third requirement of the collateral estoppel doctrine.

■ The third prong of Ohio's collateral estoppel test requires that the issue involved in the present litigation must have been identical to the issue involved in the prior suit. In a dischargeability action this means ascertaining whether the factual issues in the state court proceeding were determined "using standards identical to those in the dischargeability proceedings...." *Spilman v. Harley*, 656 F.2d 224, 226 (1981); *see also Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Thus, in accordance with this standard, the Court in this case must necessarily compare the legal basis underlying the Parties' state court case with those standards needed to maintain a dischargeability action under those statutory sections cited by the Plaintiff in her Complaint. *See Gonzalez v. Moffitt (In re Moffitt)*, 254 B.R. 389, 394 (Bankr. N.D.Ohio 2000). In making this comparison, the Court, with respect to the statutory sections cited by the Plaintiff, will initially focus on § 523(a)(6) of the Bankruptcy Code as this section is most commonly associated with the collateral estoppel doctrine.

■ Section 523(a)(6) provides that a debt is nondischargeable when it arises as the result of a "willful and malicious injury by the debtor to another entity...." For purposes of this section, willful conduct may be said to occur when a person acts with the intent to cause injury, or is substantially certain that an injury will occur. *In re Moffitt*, 252 B.R. at 922; *Hinze v. Robinson (In re Robinson)*, 242 B.R. 380, 388 (Bankr.N.D.Ohio 1999). On the other hand, a person will be found to have acted maliciously when that person acts in conscious disregard of his or her duties or without just cause or excuse. *Murray v. Wilcox (In re Wilcox)*, 229 B.R. 411, 419 (Bankr.N.D.Ohio 1998).

■ In this case, it is clear that, pursuant to the orders entered in the Parties' divorce, the Plaintiff had a legal interest in those assets sold by the Debtor. Thus, the Debtor, by disposing of the Parties' marital property in direct violation of the state court's orders, clearly committed the tort of conversion for purposes of Ohio law; Ohio law defines conversion as "an unauthorized act of control or exercise of dominion by one party over the personal property of a second party which deprives the second party of possession of said property in denial of, or under a claim inconsistent with, the rights of the second party." *Saydell v. Geppetto's Pizza & Ribs Franchise Sys., Inc.*, 100 Ohio App.3d 111, 125, 652 N.E.2d 218, 227 (1994). Although the Supreme Court of the United States has cautioned that an "innocent or technical" conversion of a person's property does not lend itself to a finding of a willful and malicious injury for dischargeability purposes,[2] it is equally clear that the tort of conversion, if done deliberately

---

**2.** In *Davis v. Aetna Acceptance Co.*, 293 U.S. 328, 332, 55 S.Ct. 151, 153 79 L.Ed. 393 (1934), the Supreme Court of the United States stated: "a willful and malicious injury does not follow as of course from every act of conversion, without reference to the circumstances. There may be a conversion which is innocent or technical, an unauthorized assumption of dominion without willfulness or malice. There may be an honest but mistaken belief, engendered by a course of dealing, that powers have been enlarged or incapacities removed. In these and like cases, what is done is a tort, but not a willful and malicious one." (internal citations omitted.)

and intentionally, will give rise to a nondischargeable debt. *Kawaauhau v. Geiger,* 523 U.S. 57, 118 S.Ct. 974, 975, 977, 140 L.Ed.2d 90, 92 (1998); *Davis v. Aetna Acceptance Co.,* 293 U.S. 328, 332, 55 S.Ct. 151, 153, 79 L.Ed. 393 (1934). In this regard, certain facts stand out to the Court.

First, the Debtor's act of converting the Plaintiff's property resulted in the Debtor being found in civil contempt of court. In this respect, a finding of contempt—which at the very least requires that the alleged contemptor must have knowingly disobeyed the underlying order—clearly lends itself to a finding of a deliberate and intentional act. *Arthur Young & Co. v. Kelly,* 68 Ohio App.3d 287, 295, 588 N.E.2d 233, 239 (1990). Second, the Debtor, although given ample opportunity to rectify his wrongful disposition of the Plaintiff's property, repeatedly failed to do so. Third, the Debtor failed to articulate to the state court (or for that matter this Court) any valid cause or excuse for his conversion of the Parties' marital property. Finally, the Debtor's actions do not seem unintentional, considering that on numerous occasions he converted a relatively large amount of the Plaintiff's property.

Thus, after considering the above facts, it is the conclusion of this Court that the judgment underlying the debt at issue in this case was based upon the Debtor's intentional and deliberate conversion of the Plaintiff's property. Moreover, for these same reasons, it is clear that the judgment at issue herein was rendered without regard to any valid excuse or viable justification offered by the Debtor. As such, it is the decision of this Court that the state court judgment rendered against the Debtor was, for purposes of 11 U.S.C. § 523(a)(6), based upon his willful and malicious conduct. Accordingly, the Court, given the particular facts of this case, will

apply the doctrine of collateral estoppel so as to preclude the Debtor from discharging his martial obligation to the Plaintiff under 11 U.S.C. § 523(a)(6).

In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

**ORDERED** that the marital debt the Defendant/Debtor, Ralph Edwin Heyne, was ordered to pay to the Plaintiff, Marylin Heyne, pursuant to a judgment entry of divorce (Case No. 91–DIV–047, Common Pleas Court of Mercer County, Ohio), be, and is hereby, determined to be a NON-DISCHARGEABLE DEBT.