**In re Erik D. KER, Debtor.**

**Tanya M. Ker, Plaintiff,**

v.

**Erik D. Ker, Defendant.**

**Bankruptcy No. 05–59978.**
**Adversary No. 05–2437.**

United States Bankruptcy Court,
S.D. Ohio,
Eastern Division at Columbus.

March 30, 2007.

Kenneth M. Richards, William B. Logan, Jr., Columbus, OH, for Plaintiff.

Michael T. Gunner, Hilliard, OH, for Defendant.

Frederick L. Ransier, Columbus, OH, Chapter 7 Trustee.

*MEMORANDUM OPINION ON AMENDED COMPLAINT TO DETERMINE DISCHARGEABILITY OF DEBTS*

JOHN E. HOFFMAN, JR., United States Bankruptcy Judge.

Section 523(a) of the Bankruptcy Code provides that a discharge in bankruptcy does not discharge an individual debtor from certain specified debts, including debts for support, 11 U.S.C. § 523(a)(5), and debts for willful and malicious injury by the debtor, 11 U.S.C. § 523(a)(6). On June 9, 2005, Erik Ker ("Erik") filed his Chapter 7 petition.[1] On September 13, 2005, Tanya Ker ("Tanya"), Erik's former spouse, commenced this adversary proceeding, by which she seeks a judgment that Erik's debts to her arising under a state court divorce decree are nondischargeable. Tanya asserts that attorney fees awarded to her by the domestic relations court constitute support. Tanya also asserts that Erik's violation of temporary orders requiring him to make mortgage payments on the parties' former marital residence and prohibiting him from withdrawing funds from certain retirement accounts gave rise to debts for willful and malicious injury.

As explained below, the debts that are the subject of this adversary proceeding are all nondischargeable. The attorney fees awarded by the state court are in the nature of support and, therefore, are nondischargeable under § 523(a)(5). In addition, Erik's failure to pay the mortgage, and the resulting loss of equity in the marital residence, as well as his withdrawal of funds held in the retirement accounts, constitute willful and malicious injuries resulting in debts that are nondischargeable under § 523(a)(6).

This memorandum opinion constitutes the Court's findings of fact and conclusions of law. *See* Fed.R.Civ.P. 52 (made applicable here by Fed. R. Bankr.P. 7052).

## I. Jurisdiction

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b) and the general order of reference entered in this district. This is a core proceeding. 28 U.S.C. § 157(b)(2).

## II. Factual and Procedural Background

### A. The State Court Proceedings

In 1986 Erik and Tanya were married. Between 1991 and 1995, they had three children. As a result of the divorce proceedings described below, Tanya was awarded custody of the children.

In early 2001 Tanya and Erik filed competing complaints for divorce and legal separation in different counties in Ohio. At that time, the equity in their marital residence and certain retirement funds and

---

1. Because Erik filed his bankruptcy case before the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), generally effective October 17, 2005, all references to the Bankruptcy Code in this opinion are to the pre-BAPCPA version. (11 U.S.C. §§ 101–1330 (2000)). *See* Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. No. 109–8, § 1501(b)(1), 119 Stat. 23, 216 (stating that, unless otherwise provided, the amendments do not apply to cases commenced under title 11 before the effective date of BAPCPA).

accounts (collectively, "Retirement Accounts") were their primary marital assets. The court in which Tanya filed her complaint and the court in which Eric filed his complaint issued temporary orders ("Orders") (i) requiring Erik to make temporary child support payments and mortgage payments on the parties' marital residence and (ii) prohibiting Erik from withdrawing funds from the Retirement Accounts. The court in which Erik filed his complaint, the Franklin County Court of Common Pleas, Division of Domestic Relations ("State Court"), ultimately presided over Tanya's and Erik's consolidated divorce proceedings.

Erik violated the Orders. In May 2002 he stopped making the required mortgage payments on the marital residence. As a result, the lender foreclosed, and the residence was sold at sheriff's sale with a resulting deficiency. Erik also withdrew funds from the Retirement Accounts, deposited the funds into an account in the name of his parents and, instead of using the funds to make child support or mortgage payments, used the funds to pay debts owed to his parents and his other personal creditors. Tanya filed various contempt motions against Erik on account of his violations of the Orders. The State Court held Erik in contempt both for his failure to make mortgage payments and his withdrawal of funds from the Retirement Accounts. The State Court also awarded Tanya $7,415.84 and certain other attorney fees in connection with her efforts to obtain the contempt ruling against Erik ("Attorney Fees").

In 2004 the State Court held a trial on the consolidated divorce proceedings. During this trial, Erik testified that his ability to make the mortgage payments (which he stopped making in May 2002) was negatively affected when he voluntarily terminated his employment as a registered nurse in January 2003. He testified

that he terminated his employment due to the burden of responding to discovery in the State Court proceeding and the burden of traveling from Columbus to Oxford, Ohio (where Tanya was then living) to visit his children. The State Court rejected these explanations as implausible. During the State Court trial, Erik also attempted to explain his withdrawal of funds from the Retirement Accounts and failure to use those funds to make payments to Tanya or payments on the mortgage by saying that he gave the funds to his parents (who previously had made loans to him) because they were better at handling money than he was. The State Court also rejected this explanation as implausible.

On July 23, 2004, the State Court entered a Judgment Entry/Decree of Divorce ("Decree") granting Tanya and Erik a divorce. The Decree, in addition to directing Erik to pay Tanya child support and spousal support, the State Court ordered Erik to pay her $71,982.20 reflecting her portion of the equity in the marital residence and her interest in the Retirement Accounts. The State Court ruled that the parties were to pay their own attorney fees, except as otherwise directed in previous orders.

## B. Testimony in the Adversary Proceeding

On October 6, 2006, this Court conducted a trial during which it heard testimony from both Tanya and Erik. That testimony fully supports the facts set forth above, none of which Erik denied. In particular, testimony by both Tanya and Erik showed that Erik did not make the required mortgage payments and that, as a result, the marital residence sold at a foreclosure sale for a deficiency, resulting in the loss of Tanya's interest in the equity. Trial Transcript ("Tr.") at 16–18; 44–45. Tanya also testified in detail regarding a conversation

she had with Erik in November 2001 in which Erik allegedly stated that he would harm her financially. Tr. at 17–18; 23–24. During the trial, Erik denied making this statement. Tr. at 40.

Erik testified that he terminated his employment in January 2003 as a result of job performance issues for which his employer had placed him on administrative leave and for which the employer was going to suspend and ultimately terminate him. Erik conceded that this explanation was contrary to the explanation he provided to the State Court, which was that he had terminated his employment due to the burdens imposed by the State Court litigation and his efforts to visit his children. Further, again contrary to the explanation he provided to the State Court, Erik sought to justify his withdrawal of funds from the Retirement Accounts by stating that the personal debts he paid with the withdrawn funds were incurred by him to permit him to make health insurance and child support payments to Tanya. Erik testified that this was not the explanation given to the State Court. Tr. at 44–48.

Erik conceded various inconsistencies in the version of events he provided to the State Court and his testimony in this adversary proceeding. He attempted to explain these inconsistencies by testifying that he chose to focus on custody issues, not financial issues, during the State Court proceedings. Tr. at 47.

## III. Arguments of the Parties

Tanya asserts that the Attorney Fees are in the nature of support and are nondischargeable under § 523(a)(5). In response, Erik argues that because the Attorney Fees were awarded in connection with his contempt of the Orders, they are in the nature of a property division, rather than support.[2]

Tanya further alleges that Erik's failure to make the mortgage payments, resulting in a dissipation of the equity in the marital residence, and his withdrawal of funds from the Retirement Accounts constitute willful and malicious injuries within the meaning of § 523(a)(6). In response, Erik argues that, for purposes of § 523(a)(6), although he intentionally failed to make the mortgage payments and intentionally depleted the Retirement Accounts, he did not intend to injure Tanya or her property interests.[3]

---

2. Erik, does not contest the dischargeability of debts expressly designated by the State Court as alimony, maintenance, or support.

3. Tanya also argued that Erik should be precluded by the doctrine of collateral estoppel (or issue preclusion) from relitigating any of the issues decided by the State Court. At trial, Erik argued that he should not be precluded from relitigating these issues. The Court finds that it need not make a ruling as to the preclusive effect to be accorded to the State Court's findings. As discussed above, Erik conceded most of the State Court's findings, including the finding that he failed to make payments on the mortgage and that he withdrew funds from the Retirement Accounts. Erik disputes the State Court's finding that he threatened and intended to injure Tanya financially. Tanya and Erik, however, both offered testimony on this issue and others relating to the dischargeability of the debts. This Court, therefore, may make its own independent determinations regarding the relevant issues. Finally, none of the Court's independently-derived findings are contrary to the findings of the State Court. Accordingly, the Court need not reach the collateral estoppel issue. See Shteysel v. Shteysel (In re Shteysel), 221 B.R. 486, 490 (Bankr.E.D.Wis.1998) ("This court concludes, based upon the evidence presented and without the need to resort to collateral estoppel, that both willfulness and maliciousness were established."); McDaniel v. Border (In re McDaniel), 181 B.R. 883, 887 (Bankr.S.D.Tex. 1994) ("This Court need not reach the issues of collateral estoppel or res judicata as it has independently determined the nature ... of the debt for dischargeability purposes based upon the evidence presented before it.").

## IV. Legal Analysis

### A. Sections 523(a)(5)—Nondischargeability of Debts for Alimony, Maintenance or Support

■ Section 523(a)(5) of the ·Bankruptcy Code provides in part that:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

. . . .

(5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record . . ., but not to the extent that—

. . . .

(B) such debt includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance, or support. . . .

11 U.S.C. § 523(a)(5). In order to afford the honest but unfortunate debtor a fresh start, the Court narrowly construes exceptions to discharge. *See Brumbaugh v. United States (In re Brumbaugh)*, 267 B.R. 800, 806 (Bankr.S.D.Ohio 2001).

■ The United States Court of Appeals for the Sixth Circuit has set forth the following four-part test for determining whether an obligation not denominated as support is actually in the nature of support and thus excepted from a debtor's discharge:

First, the obligation constitutes support only if the state court or parties intended to create a support obligation. Second, the obligation must have the actual effect of providing necessary support. Third, if the first two conditions are satisfied, the court must determine if the obligation is so excessive as to be unreasonable under traditional concepts of support. Fourth, if the amount is unreasonable, the obligation is dischargeable to the extent necessary to serve the purposes of federal bankruptcy law.

*Fitzgerald v. Fitzgerald (In re Fitzgerald)*, 9 F.3d 517, 520 (6th Cir.1993) (citing *Long v. Calhoun (In re Calhoun)*, 715 F.2d 1103, 1109–10 (6th Cir.1983)). The nondebtor bears the burden of establishing that an obligation is in the nature of support. *Calhoun*, 715 F.2d at 1111.

■ Applying the *Calhoun* factors to the facts of this case, the Court finds first, that the State Court intended to create and did create a support obligation for Tanya and her children. By the Decree, the State Court ordered Erik to pay Tanya spousal support and child support. *See Sorah v. Sorah (In re Sorah)*, 163 F.3d 397, 401 (6th Cir.1998) (holding that obligation labeled as support that has the indicia of support should be conclusively presumed to be a support obligation).

Second, the State Court award of Attorney Fees has the actual effect of providing necessary support. Tanya incurred the Attorney Fees in connection with her efforts to find Erik in contempt for violating the Orders. By withdrawing the Retirement Funds to pay other creditors, and by permitting the marital residence to go into foreclosure, Erik used money that should have gone to Tanya for the support of her and their children. Only by filing and prosecuting the contempt motion was Tanya able to obtain the State Court ruling against Erik regarding his improper use of the Retirement Funds and his wasting of the equity in the real estate. The Attorney Fees were a necessary component of obtaining the State Court contempt judgment and thus are in the nature of support.

Third, the Attorney Fees are not so excessive in amount as to be unreasonable under traditional concepts of support.

The fourth and final *Calhoun* factor would come into play only if this Court were to determine that the amount of the debt is unreasonable, which it does not. Erik's debt for the Attorney Fees accordingly satisfies the *Calhoun* test.

Erik has cited no authority in support of his argument that the Attorney Fees do not fall within the ambit of § 523(a)(5)'s exception to discharge. To the contrary, courts within the Sixth Circuit have held that attorney fee awards constitute support under the *Calhoun* test. *See Goans v. Goans (In re Goans)*, 271 B.R. 528, 534 (Bankr.E.D.Mich.2001) ("The award of attorney fees in a divorce judgment is usually found to be in the nature of support and thus nondischargeable."); *In re Smither*, 194 B.R. 102, 105 (Bankr.W.D.Ky.1996) ("Here, from reviewing the facts of this case, it is clear under either the *Fitzgerald* or *Calhoun* doctrines that the Debtor's obligation for the Creditor's state court attorney fees meets the four part test of 11 U.S.C. § 523(a)(5) and is nondischargeable.").

Erik's argument that the Attorney Fees are not support because they relate to a property division is without merit. Erik's contemptuous acts occurred, and the State Court awarded Tanya the Attorney Fees, before there ever was a division of property.

In sum, Tanya has carried her burden of establishing under § 523(a)(5) that the Attorney Fees are in the nature of support and therefore not subject to discharge.

**B. Section 523(a)(6)—Nondischargeability of Debts for Willful and Malicious Injury**

Section 523(a)(6) of the Bankruptcy Code provides that:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

. . . .

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity. . . .

11 U.S.C. § 523(a)(6).

The determination of whether a debt is for willful and malicious injury is a matter of federal law. *South Atlanta Neurology & Pain Clinic, P.C. v. Lupo (In re Lupo)*, 353 B.R. 534, 550 (Bankr. N.D.Ohio 2006). In *Kawaauhau v. Geiger*, 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998), the United States Supreme Court held that § 523(a)(6) does not exempt from discharge debts arising from negligently or recklessly inflicted injury because "[t]he word 'willful' in (a)(6) modifies the word 'injury,' indicating that nondischargeability takes a deliberate or intentional *injury*, not merely a deliberate or intentional *act* that leads to injury." *Geiger*, 523 U.S. at 61, 118 S.Ct. 974. Applying *Geiger*, the Sixth Circuit has held that, for there to be a finding of willful and malicious injury, lack of excuse or justification for the debtor's actions is not sufficient, nor is a showing that the debtor should have known his actions would cause injury. Instead, the debtor "must will or desire harm, or believe injury is substantially certain to occur as a result of his behavior." *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 465 n. 10 (6th Cir.1999). In making the determination that an injury is willful, " '[i]n addition to what a debtor may admit to knowing, the bankruptcy court may consider circumstantial evidence that tends to establish what the debtor must have actually known when taking the injury-producing action.' " *CMEA Title Agency, Inc. v. Little (In re Little)*, 335 B.R. 376, 383 (Bankr.N.D.Ohio 2005) (quoting *Jett v. Sicroff (In re Sicroff)*, 401 F.3d 1101, 1106 (9th Cir.), cert. denied 545 U.S. 1139, 125 S.Ct. 2964, 162 L.Ed.2d 888 (2005)).

For purposes of § 523(a)(6), an injury is malicious when the debtor "acts in conscious disregard of his duties or without just cause or excuse." *Gonzalez v. Moffitt (In re Moffitt)*, 252 B.R. 916, 923 (6th Cir. BAP 2000). The willful and malicious requirements are separate, and "both requirements must be met under § 523(a)(6)." *Lupo*, 353 B.R. at 550. Under § 523(a)(6), "injury" includes injury to tangible or intangible property rights. *Id.* at 551. The nondebtor has the burden of proving that the debt is for willful and malicious injury. *Id.* at 550.

■ Applying *Geiger* and *Markowitz*, courts within the Sixth Circuit and elsewhere have held that the kind of behavior in which Erik admittedly engaged—dissipating marital assets and violating court orders—warrants a finding of willful and malicious injury and nondischargeability under § 523(a)(6). *See Heyne v. Heyne (In re Heyne)*, 277 B.R. 364, 368 (Bankr. N.D.Ohio 2002); *Lipira v. Kaczmarski (In re Kaczmarski)*, 245 B.R. 555, 562 (Bankr. N.D.Ill.2000); *Shteysel*, 221 B.R. at 491. In *Heyne*, the debtor disposed of the spouse's assets in violation of an order of the domestic relations court. The court held that the debt was nondischargeable under § 523(a)(6). *Heyne*, 277 B.R. at 368–69. Likewise, in *Kaczmarski*, the debtor withdrew funds from a retirement account and borrowed funds on a line of credit in violation of an order of the domestic relations court. The bankruptcy court held that the debtor was aware that his actions were substantially certain to lead to injury to his wife or her property interests and his actions were, therefore, willful. *Kaczmarski*, 245 B.R. at 561–62. The *Kaczmarski* court also held that, because the debtor withdrew the funds from the retirement account despite a court order prohibiting him from doing so and thereafter used those funds for his personal benefit, the injury to the nondebtor was willful and malicious. *Id.* at 562. Similar-ly, in *Shteysel*, after being served with a divorce complaint, the debtor liquidated his retirement account, savings account and investment account and transferred the proceeds to a family member. The court held that this action and the debtor's violation of a subsequent court order to make a payment to his spouse gave rise to a debt for willful and malicious injury. *Shteysel*, 221 B.R. at 490–91.

Based on the authorities discussed above, the Court holds that Erik's withdrawal of the funds from the Retirement Accounts and misuse of those funds gave rise to a willful and malicious injury to Tanya and her property interests. Likewise, the Court holds that Erik's dissipation of the equity in the marital residence by failing to comply with orders to make the mortgage payments constitutes a willful and malicious injury to Tanya and her property interests. Contrary to Erik's arguments at trial, his actions were not at all akin to the professional malpractice engaged in by the debtor in *Geiger*. Here, Erik's infliction of injury was intentional, not merely negligent or reckless. Nor is this case like *Little*, in which the court found the evidence insufficient to establish that the debtor engaged in fraud or caused the nondebtors' injury. By contrast, there is no question in this case that Erik's actions injured Tanya and her property interests. In addition to *Geiger* and *Little*, Erik relies on *Sicroff, supra*, and *Superior Metal Products v. Martin (In re Martin)*, 321 B.R. 437 (Bankr.N.D.Ohio 2004). In those cases, which are wholly inapposite, the courts made a finding of willful and malicious injury (in *Sicroff*, based on defamatory conduct by the debtor, and in *Martin*, based on the debtor's misconduct in cashing a check erroneously mailed to him) and held that the related debt was nondischargeable under section 523(a)(6).

The result is the same here. The testimony showed that Erik was living in the marital residence up until it was sold at foreclosure sale. He had an obligation under the Orders to make the mortgage payments, but did not. By refusing to make the payments, he knew that the equity in the property would be lost. Presumably he could have petitioned the State Court to modify the Orders to permit him to use his portion of the retirement funds to keep the mortgage current. Or he could have negotiated with Tanya to permit a sale of the property while there was still equity remaining. Yet, he used the Retirement Funds in violation of the Orders to pay other creditors and intentionally wasted the equity in the marital residence. Further, he became voluntarily unemployed. Courts have found, when determining under § 523(a)(15) whether a debtor has the ability to pay a marital debt, that voluntary unemployment is a factor weighing against the debtor. *See In re Molino*, 225 B.R. 904, 908 (6th Cir. BAP 1998) (conduct of debtor who quit job to help new wife in a dog grooming business, thereby artificially diminishing his ability to pay marital debt, was a factor properly considered by court in § 523(a)(15) dischargeability action); *In re Burton*, 242 B.R. 674, 681–84 (Bankr. W.D.Mo.) (court imputed income to debtor who willfully chose not to seek gainful employment). While the present case does not involve a question of inability to pay under § 523(a)(15), the court may draw the same inference. By voluntarily terminating his employment, Erik acted with the intent to injure his spouse.

The Court reaches its § 523(a)(6) determination after reviewing the totality of the circumstances and considering the credibility of the witnesses. *See Shteysel*, 221 B.R. at 490. At trial, Erik asserted that he stopped making the mortgage payments in part as a result of the termination of his employment in December 2002 or January 2003. Erik, however, gave inconsistent explanations for the termination to this Court and the State Court. In addition, Erik stopped making the mortgage payments in May 2002, several months before the termination of his employment. Like the debtor in *Shteysel*, Erik was not a credible witness. Moreover, as in *Shteysel*, the "sequence of events" here warrants a finding that the injury Erik inflicted was willful and malicious. This sequence—stopping the mortgage payments months before terminating his employment, becoming voluntarily unemployed and withdrawing and misusing funds from the Retirement Accounts despite the Orders to the contrary—establishes a finding that the injury was willful and malicious, regardless of whether or not Erik actually told Tanya that he would ruin her financially. "[W]hen inconsistencies arise as between a person's testimony, and their prior actions, the maxim, 'actions speak louder than words' will most often lead to the correct result." *In re Pawlowicz*, 337 B.R. 640, 646 (Bankr.N.D.Ohio 2005). The testimony at trial in this adversary proceeding supports no other conclusion but that Erik knew that harm was substantially certain to occur as a result of his actions and that he acted in conscious disregard of his duty under the court Orders.

## V. Conclusion

For the foregoing reasons, the Court holds that the Attorney Fees awarded to Tanya, are in the nature of support and are nondischargeable pursuant to 11 U.S.C. § 523(a)(5) and that the debts owed by Erik to Tanya on account of Erik's failure to make payments on the mortgage and the resulting loss of equity in the marital residence, as well as Erik's withdrawal of funds from the Retirement Accounts, are nondischargeable pursuant to 11 U.S.C. § 523(a)(6). A judgment in ac-

cordance with this Memorandum Opinion will be entered separately.

**IT IS SO ORDERED.**