# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 13-60251

United States Court of Appeals
Fifth Circuit

**FILED**

February 7, 2014

Lyle W. Cayce
Clerk

In the Matter of:  MICHAEL VERNON SHANKLE,

Debtor

-----------------------------------------------------------------------

MICHAEL VERNON SHANKLE,

Appellant,

versus

DIANNE SHANKLE,

Appellee.

Appeal from the United States District Court
for the Northern District of Mississippi
No. 1:12-CV-117

Before SMITH, DeMOSS, and HIGGINSON, Circuit Judges.

PER CURIAM:*

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 13-60251

Michael Shankle appeals the district court's judgment affirming the bankruptcy court's determination that the obligations stemming from a divorce decree and subsequent state-court judgments constituted a nondischargeable debt pursuant to 11 U.S.C. § 523(a)(6). We affirm.

I.

The Shankles divorced in 1999. The divorce court ordered Michael to pay alimony and child support to Dianne and to divide certain marital property. Paragraph eleven of the decree provided, in relevant part,

> The Court finds the following items of personal property are marital property, and shall be equally divided by the parties: Idex Mutual Fund with an approximate balance of $80,000.00; Baker-Hughes Stock in the approximate amount of $4,000.00; Invesco Mutual Fund with an approximate balance of $100,000.00.

Based on that division, each spouse was entitled to approximately $92,000. Instead of complying, however, Michael withdrew all funds in the Invesco account—$114,222.83—and remitted the proceeds to a John Hancock account in his name, later spending it all for his own benefit. He testified that he considered the withdrawal to be his one-half of the proceeds from the three accounts but refused to tender the remaining two accounts, which were registered in his name, to Dianne.

The next year, an Arkansas state court found Michael in contempt for failing to divide the three accounts or pay other sums as ordered. Although the proceeds from the Invesco account had been spent by that time, the Idex account was worth about $99,000. Michael nevertheless continued his refusal to tender Dianne the money to which she was entitled under the divorce decree.

In 2002, the state court again found Michael in willful contempt of its previous orders for refusing to divide the three accounts and ordered him to pay Dianne—within ten days—her share of the accounts listed in paragraph

No. 13-60251

eleven plus interest.  Additionally, the court directed him to execute the documentation necessary to transfer his interest in the Idex account and the Baker-Hughes stock to Dianne.

Michael testified that because of steep market declines, the Idex account was worth only $50,456.13.  Later that year, Dianne received that sum, slightly less than what she would have gotten from the Idex account had Michael complied with the divorce decree, taking into account the interest that had accrued.

In 2006, the state court found Michael liable to Dianne for $149,934.40 and awarded a judgment in that amount plus interest from June 6, 2006.  Of that amount, $97,435.91 was for "Marital Property awarded by Decree of Divorce to [Dianne] but never tendered by [Michael] (with interest)."  This sum represented Dianne's share of the Invesco and Idex accounts (plus interest) that she never had received.[1]

A few months earlier, in late 2005, Michael filed a request for relief under Chapter 7 of the Bankruptcy Code.  In a schedule filed with the bankruptcy court, he listed a disputed debt owed to Dianne.  Dianne in turn filed an adversary proceeding to determine the dischargeability of that amount, which consisted of unpaid alimony, maintenance, child support, and other obligations Michael had been ordered to pay pursuant to the divorce decree and later state-court proceedings.

The bankruptcy court held a trial with respect to the adversary proceeding in early 2012.  Because the parties stipulated that the amounts owed for alimony, child support, and attorneys' fees were nondischargeable, the only issue was whether a debt of $97,435.91 for marital property awarded to Dianne but never tendered by Michael was nondischargeable.  The bankruptcy court

---

[1] Dianne previously received the Baker-Hughes stock.  The precise amount of the transfer, however, is unknown.

3

No. 13-60251

concluded that Michael's conduct constituted willful and malicious injury to Dianne under § 523(a)(6) of the Bankruptcy Code and, therefore, was a nondischargeable debt. Michael appealed to the district court, which affirmed.

## II.

"We review the decision of the district court by applying the same standard to the bankruptcy court's findings of fact and conclusions of law that the district court applied." *Morrison v. W. Builders of Amarillo, Inc. (In re Morrison)*, 555 F.3d 473, 480 (5th Cir. 2009). Namely, the "bankruptcy court's findings of fact are subject to review for clear error, and its conclusions of law are reviewed *de novo*." *Id.* (citing *Gen. Elec. Capital Corp. v. Acosta (In re Acosta)*, 406 F.3d 367, 372 (5th Cir. 2005)). "A finding of fact is clearly erroneous only if on the entire evidence, the court is left with the definite and firm conviction that a mistake has been committed." *Cadle Co. v. Duncan (In re Duncan)*, 562 F.3d 688, 694 (5th Cir. 2009) (per curiam) (citation and internal quotation marks omitted).

## III.

The sole issue is whether Michael's obligation resulting from paragraph eleven and subsequent state-court judgments is a nondischargeable debt under 11 U.S.C. § 523(a)(6), which states that a debt is nondischargeable "for willful and malicious injury by the debtor to another entity or to the property of another entity." An injury is willful and malicious when there is either a subjective motive to cause harm or an objective substantial certainty of harm. *Miller v. J.D. Abrams Inc. (In re Miller)*, 156 F.3d 598, 606 (5th Cir. 1998).

The bankruptcy court, in concluding that Michael's obligation to Dianne was nondischargeable, noted that several bankruptcy courts have found that a debtor's failure to tender marital assets in contravention of a divorce decree

4

No. 13-60251

constitutes willful and malicious injury under § 523(a)(6).[2]  It also noted that the amount of Michael's indebtedness was established by the state-court order that had set the sum at $97,435.91 plus interest.  Michael does not dispute that amount but instead attempts to distinguish those rulings on the basis that the debtors in those cases purportedly engaged in conduct more egregious than his own.  Nevertheless, he has failed to show that the bankruptcy court clearly erred in concluding that his repeated failure to tender to Dianne her half of the marital assents constituted a "willful and malicious injury" because there was an objective substantial certainty of harm to Dianne in failing to do so.

Taking each of Michael's arguments in turn, first, he suggests that the bankruptcy court's decision effectively penalizes him for exercising his right to appeal the judgment of the divorce court.  The bankruptcy court commented that Michael's actions "[did not] excuse not doing what you should have done back in 1999."  As the district court noted, the record does not contain any evidence that Michael's appeal concerned paragraph eleven or that his

---

[2] *See Ker v. Ker (In re Ker),* 365 B.R. 807, 814–15 (Bankr. S.D. Ohio 2007) ("[C]ourts within the Sixth Circuit and elsewhere have held that the kind of behavior in which Erik admittedly engaged—*dissipating marital assets and violating court orders*—warrants a finding of willful and malicious injury and nondischargeability under § 523(a)(6)." (emphasis added)); *Heyne v. Heyne (In re Heyne),* 277 B.R. 364, 368–69 (Bankr. N.D. Ohio 2002) (finding a debtor's disposal of marital assets in violation of a divorce decree that resulted in civil contempt to be willful and malicious for the purposes of § 523(a)(6)); *Lipira v. Kaczmarski (In re Kaczmarski),* 245 B.R. 555, 561–62 (Bankr. N.D. Ill. 2000) ("By violating the restraining order that his wife had obtained for the purpose of preventing his dissipation of marital assets, Debtor was aware that his actions were substantially certain to lead to injury of Lipira or her property interest.  Debtor's actions were thus willful. . . . His actions were malicious because they were without just cause or excuse and contrary to his clear legal duty as found by state court orders.  A convenient memory about state court orders in a divorce proceeding is not an excuse to violate these orders."); *Shteysel v. Shteysel (In re Shteysel),* 221 B.R. 486, 489–91 (Bankr. E.D. Wis. 1998) (finding that a debtor's actions in dissipating marital assets before a court order in divorce proceedings constituted willful and malicious conduct under § 523(a)(6)); *see also Structured Invs. Co., LLC v. Smith (In re Smith),* 302 B.R. 530, 534 (Bankr. N.D. Miss. 2003) (finding that deliberately diverting monthly pension plan payments contractually transferred to another constituted a nondischargeable debt under § 523(a)(6)).

obligation to comply with that decree was stayed pending his appeal.[3]

Second, Michael contends that he "left" or "reserved" the Idex account for Dianne. Although it appears that the Idex account, along with the Baker-Hughes stock, would likely have satisfied Michael's obligation under the divorce decree had he turned over possession when first ordered to do so, the bankruptcy court found that Michael took no action to transfer any part of the marital assets until the 2002 contempt order despite knowledge that failure to comply with the state court's orders would cause Dianne economic injury. Michael's belief that the Idex account—which at one point was worth roughly $99,000—would satisfy his obligation to Dianne, however, does not explain the almost three-year delay in turning over the marital assets.

Third, Michael suggests that Dianne caused the Idex account to be frozen and that this, combined with market declines, excuses the dissipation in marital assets. He also claims that when he learned that the Idex account had decreased in value, he tried to preserve the principal in the account. Although the record evidence is inconclusive with respect to who or what caused the Idex account to be frozen, the bankruptcy court correctly noted, "[h]ad the defendant not defied the divorce decree, this would not even be an issue." Both the market-induced decline in value and the freeze occurred only *after* Michael had failed to tender Dianne her half of the value of the account at the time of the divorce decree.

Finally, Michael underscores that, pre-divorce and of his own accord, he paid support to Dianne. Such conduct, although laudatory, does not explain his repeated failure to comply with his obligation to Dianne or his continued defiance of the state-court orders.

---

[3] In fact, Michael, in his brief before this court, describes his appeal as being "primarily" with respect to paragraph *fifteen* of the divorce decree.

No. 13-60251

Accordingly, we agree with the district court that the bankruptcy court correctly exercised its discretion in finding that Michael's repeated refusal to transfer marital assets, despite multiple contempt orders, constituted an objective substantial certainty of harm to Dianne and, as a result, a willful and malicious injury under § 523(a)(6). Because the bankruptcy court did not clearly err, we AFFIRM the judgment of the district court.