**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

In re: Seth E. Sicroff,
                              *Debtor,*

Stephen C. Jett,
                    *Plaintiff-Appellant,*

          v.

Seth E. Sicroff,
                    *Defendant-Appellee,*

          and

Office of the United States
Trustee,
                              *Trustee.*

No. 03-15610

D.C. No.
CV-02-00975-LKK

ORDER AND
AMENDED
OPINION

Appeal from the United States District Court
for the Eastern District of California
Lawrence K. Karlton, Senior Judge, Presiding

Argued and Submitted
May 12, 2004—San Francisco, California

Submission Withdrawn May 27, 2004
Resubmitted February 9, 2005

Filed March 23, 2005
Amended April 11, 2005

Before: Diarmuid F. O'Scannlain, Eugene E. Siler,* and
Michael Daly Hawkins, Circuit Judges.

*The Honorable Eugene E. Siler, Senior United States Circuit Judge for
the Sixth Circuit, sitting by designation.

Opinion by Judge O'Scannlain

**COUNSEL**

Randall L. Wiens, Law Offices of Randall L. Wiens, Sacramento, California, for the petitioner.

Daniel P. Whaley, Law Office of Daniel P. Whaley, Sacramento, California, for the respondent.

**ORDER**

The court's opinion, filed March 23, 2005, is hereby amended as follows: On slip op. 3535, after the sentence in Section II.B.1. that reads "However, because Sicroff explicitly conceded that his behavior was 'willful and intentional' for purposes of the dischargeability hearing, there is no reason to dwell on the 'willful' prong," the following footnote is to be inserted:

> Because of Sicroff's concession, we do not need to apply the analysis set out in *Kawaauhau v. Geiger*, 523 U.S. 57 (1998), in which the Supreme Court

addressed the question of when an injury is "willful."

This order shall not extend the time for filing petitions for rehearing beyond the original deadline.

## **OPINION**

O'SCANNLAIN, Circuit Judge:

We must decide whether a debt was nondischargeable under the Bankruptcy Act as one for willful and malicious injury when it arose out of a published defamatory letter from a graduate student to the Chancellor of the University of California at Davis.

## I

Stephen C. Jett and Seth E. Sicroff were, respectively, a tenured professor and a graduate student in the Geography Department of the University of California at Davis. When the university proposed closing the department, Sicroff sent a letter, dated April 17, 1993, to the Chancellor and Deans of the university, with copies to the California Aggie, Sacramento Bee and Davis Enterprise newspapers, in which he purported to reveal the "real motivation" for closing the department. Sicroff's letter stated, in part, that:

> Despite the substantial improvements that may be credited to Prof. Ives [and his new hires], the old guard of the geography department has plagued you with a continuous barrage of specious complaints about Prof. Ives. In particular, Prof. Stephen Jett and Prof. Conrad Bahre have been relentless in their accusations against the new chairperson, even while they themselves have been the subject of numerous

and well-substantiated charges of unprofessional conduct.

Too weak to fire or even discipline tenured faculty, no matter how serious their misbehavior, you have taken this opportunity to rid yourself of a burr under your saddle. Shame on you, and shame on us all if we put up with it!

Based largely on the accusations against them contained in this letter, Professors Jett and Bahre filed two suits, which were later consolidated, against Sicroff and several other defendants alleging, among other injuries, slander, libel and intentional infliction of emotional distress. Before trial, the other defendants settled their claims with Jett and Bahre. Sicroff, however, refused to participate in the settlement and threatened to sue Jett and Bahre with malicious prosecution if they dismissed their claims against him.[1]

After the partial settlement, the Sacramento County Superior Court referred the remaining claims to binding arbitration before retired Sacramento Superior Court Judge Benjamin A. Diaz, who found that Sicroff had made defamatory statements against Jett and Bahre. On April 23, 1996, the court entered awards for Bahre of $34,500 (including $4,500 of punitive damages) and for Jett of $23,000 (including $3,000 of punitive damages). Sicroff appealed this finding and the awards to the Third District Court of Appeal, which reversed the judgment against him, ruling that the trial court had improperly denied him his right to a jury trial by ordering the matter to binding arbitration over his objection. On remand, the trial court refused to confirm the arbitration-based judgment and its decision was upheld on a second appeal, which the appellate court determined to be frivolous.

---

[1]Despite this threat, Bahre has since dismissed his claim against Sicroff, leaving only Jett's claims against Sicroff to be resolved.

While this litigation was ongoing, Sicroff filed for bankruptcy. Jett and Bahre timely filed adversary complaints to determine dischargeability based upon their then-existing judgments against Sicroff and the bankruptcy court lifted its automatic stay to allow the completion of the state court litigation between the parties. Following a second remand to the state trial court, a settlement conference was conducted, at which Sicroff failed to appear.[2] After the collapse of the settlement conference, the state court trial proceedings were stayed pending resolution of the bankruptcy proceeding that gives rise to this appeal.

On February 28, 2002, the bankruptcy court held a hearing limited to the issue of the dischargeability of Sicroff's debt[3] to Jett. At the hearing, Sicroff conceded that his conduct was "willful and intentional" but denied that it was "malicious."

In a memorandum order, the bankruptcy court found Sicroff's debt to Jett to be dischargeable. In pertinent part, it reasoned that:

> First of all, it is clear from . . . the April 17, 1993 letter, that the primary purpose of Debtor's actions was

---

[2]At an early point in the course of this litigation—although exactly when is not clear from the record—Sicroff appears to have moved to Nepal, from whence he is unwilling to travel for the purpose of actively participating in his defense.

[3]Although there is not yet a state court judgment against Sicroff arising out of the alleged defamation, we have recognized that the filing of a claim, without reducing it to a judgment, is sufficient to establish a debt for the purpose of a dischargeability determination. *Banks v. Gill Distrib. Ctrs., Inc.* (*In re Banks*), 263 F.3d 862, 868 (9th Cir. 2001) ("The Bankruptcy Code defines the term 'debt' to mean 'liability on a claim,' and 'claim' is defined as a 'right to payment, whether or not such right is reduced to judgment . . . .' ") (internal citations omitted); *see also American Law Ctr. PC v. Stanley* (*In re Jastrem*), 253 F.3d 438, 442 (9th Cir. 2001) ("[T]he definition of 'claim' in bankruptcy is exceedingly broad. A 'claim' is 'a right to payment, whether or not such right is reduced to judgment . . . .' ").

to protest the closing of the Geography Department at the University of Davis. While there can be no doubt that Debtor intentionally and repeatedly published his untrue statements about Plaintiff, the evidence tends to show that he believed those statements were true and, in his opinion, explained the real cause for the proposal to close the Geography Department.

. . . .

Secondly, objecting to the closing of the Geography Department and pointing out the perceived misconduct of University officials may be the "just cause and excuse" that would exonerate Debtor's actions. . . . Debtor did not make his statements to spite the Plaintiff, but to support the larger cause, at least in his mind, of unmasking the real reasons the University officials intended to eliminate the Geography Department. In that sense, at least, Debtor's actions were not malicious.

Jett filed a timely notice of appeal to the District Court, which affirmed. Jett timely appeals to this court.

## II

"[A] central purpose of the [Bankruptcy] Code is to provide a procedure by which certain insolvent debtors can reorder their affairs, make peace with their creditors, and enjoy 'a new opportunity in life and a clear field for future effort, unhampered by the pressure and discouragement of preexisting debt.' " *Grogan v. Garner*, 498 U.S. 279, 286 (1991) (quoting *Local Loan Co. v. Hunt*, 292 U.S. 234, 244 (1934)). It is only the "honest but unfortunate" debtor, however, who is entitled to an entirely unencumbered fresh start. *Id.* at 287. Accordingly, the Bankruptcy Code exempts certain debts from discharge. Such exceptions to discharge "should be con-

fined to those plainly expressed," *Kawaauhau v. Geiger*, 523 U.S. 57, 62 (1998) (quoting *Gleason v. Thaw*, 236 U.S. 558, 562 (1915)), and should "be strictly construed in order to serve the Bankruptcy Act's purpose of giving debtors a fresh start." *Industrie Aeronautiche v. Kasler* (*Matter of Kasler*), 611 F.2d 308, 310 (9th Cir. 1979).

[1] Section 523(a)(6) of the Bankruptcy Code provides one such express limitation: "(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt — . . . (6) for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6). Jett alleges that Sicroff's defamatory statements constituted a "willful and malicious injury" and that, therefore, the debt to which they give rise should not be discharged.

We turn first to the question of whether any of Sicroff's statements were defamatory and then to the question of whether the injury that they caused was "willful and malicious."

A

The injury alleged in this case is Sicroff's defamation of Jett. The bankruptcy court found simply that Sicroff had published untrue statements about Jett. On appeal, the district court noted that the bankruptcy court had failed to distinguish adequately between false assertions of provable fact and statements of opinion and conducted a more thorough review of many of the allegedly defamatory statements. The district court concluded that many of the statements fell outside the realm of potentially defamatory statements but, because it found that Jett was unable to carry his burden of proving that the defamation both willfully injured him and was malicious, the court did not scrutinize the remaining statements and assumed *arguendo* that they were defamatory. We must, therefore, conduct that more probing review ourselves.

**[2]** In California, libel is defined by statute simply as "a false and unprivileged publication by writing [or other means], which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation." Cal. Civ. Code § 45.

We agree with the district court that certain statements were either simple name-calling or not provable factually. *See Flowers v. Carville*, 310 F.3d 1118, 1127 (9th Cir. 2002) ("The law provides no redress for harsh name-calling."). However, this leaves at least some statements that were not evaluated by either the bankruptcy court or the district court for their libelous nature. These statements include Sicroff's allegations, contained in his April 17, 1993 letter, that Professors Jett and Bahre had been "the subject of numerous . . . charges of unprofessional conduct," should have been disciplined for "serious misbehavior," and had brought a "continuous barrage of specious complaints" against the department chair.

Under California law, "it is a question of law for the court whether a challenged statement is reasonably susceptible of an interpretation which implies a provably false assertion of actual fact." *Kahn v. Bower*, 284 Cal. Rptr. 244, 250 (Cal. Ct. App. 1991). The California courts have explained:

> [I]n ascertaining whether the statement in question is sufficiently communicative of provable falsity or actual fact to subject the defendant to liability, courts will continue to consider the totality of the circumstances . . . . First, the language of the statement is examined. For words to be defamatory, they must be understood in a defamatory sense . . . . Next, the context in which the statement was made must be considered . . . . This contextual analysis demands that the courts look at the nature and full content of the communication and to the knowledge and under-

standing of the audience to whom the publication was directed.

*Id.* at 249 (internal quotations and citations omitted).

**[3]** The bankruptcy court determined that statements in the April 17, 1993 letter regarding "numerous and well-substantiated charges of professional misconduct" were false and Sicroff's counsel did not disagree. The record also shows that Jett had not been disciplined for "serious misbehavior" and that he had not brought a "continuous barrage of specious complaints" against the department chair. Sicroff offered no defense of "privilege" for his statements. Finally, by alleging "professional misconduct," "serious misbehavior" and other unprofessional activity, Sicroff's statements had a tendency to injure Jett in his occupation. For these reasons, we must conclude that Sicroff's statements satisfied the requirements of libel under California law.

### B

**[4]** We analyze the willful and malicious prongs of the dischargeability test separately. *See Carillo v. Su* (*In re Su*), 290 F.3d 1140, 1146 (9th Cir. 2002) (noting with approval that "in *In re Jercich*, we treated the 'malicious' injury requirement of § 523(a)(6) as separate from the 'willful' requirement"); *see also Petralia v. Jercich (In re Jercich)*, 238 F.3d 1202, 1207-09 (9th Cir. 2001). Under the test, a creditor must demonstrate nondischargeability by a preponderance of the evidence. *Grogan*, 498 U.S. at 291. When applying this standard, "[i]n addition to what a debtor may admit to knowing, the bankruptcy court may consider circumstantial evidence that tends to establish what the debtor must have actually known when taking the injury-producing action." *In re Su*, 290 F.3d at 1146 n.6.

1

**[5]** The bankruptcy court concluded that the facts fell short of proving that Sicroff's acts were either willful or malicious. However, because Sicroff explicitly conceded that his behavior was "willful and intentional" for purposes of the dischargeability hearing, there is no reason to dwell on the "willful" prong.[4] Sicroff offered no evidence that could counterbalance the weight of his concession and the bankruptcy court's contrary determination was clearly erroneous.

2

**[6]** An injury is "malicious," as that term is used in Section 523(a)(6), when it is: "(1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse." *In re Jercich*, 238 F.3d at 1209. Within the plain meaning of this definition, it is the wrongful act that must be committed intentionally rather than the injury itself. *See Murray v. Bammer (In re Bammer)*, 131 F.3d 788, 791 (9th Cir. 1997) ("This four-part definition does *not* require a showing of . . . . an intent to injure, but rather it requires only an intentional act which causes injury.").

**[7]** Because we are persuaded that at least some of Sicroff's statements were libelous, we also conclude that the first two criteria of "malicious injury" are met. A libelous act, by its nature, is self-evidently wrongful and is committed by an intentional act of publication—in this case, by Sicroff's dissemination of his letter. The third criterion—that the action necessarily cause injury—is also met because Sicroff's statements were directed at Jett's professional reputation and, therefore, will necessarily harm him in his occupation. Having satisfied the first three elements of "malicious injury," to pre-

---

[4]Because of Sicroff's concession, we do not need to apply the analysis set out in *Kawaauhau v. Geiger*, 523 U.S. 57 (1998), in which the Supreme Court addressed the question of when an injury is "willful."

vail, Jett must demonstrate by a preponderance of the evidence that Sicroff published his statements "without just cause and excuse." It was this final criterion that the bankruptcy court found lacking.

a

The "just cause and excuse" element of "malicious injury" presents a mixed question of law and fact, which we review de novo. *Id.* at 791-92.

[8] The bankruptcy court found that Sicroff had "just cause and excuse" to defame plaintiff despite acknowledging that it could find "no cases . . . that defined that phrase." We have, however, interpreted that phrase in at least one prior case. In *In re Bammer*, an en banc panel of this court reversed a Bankruptcy Appellate Panel decision that intentional fraud could be undertaken with "just cause and excuse" when the debtor acted "out of compassion for his mother" and no benefit inured to himself. *Id.* at 791. Explaining our reversal, we declared that "[w]e can think of no reason consistent with section 523 . . . to permit a standardless, unmeasurable, emotional, and nonlegal concept such as compassion to negate an identifiably and *legally* wrongful act." *Id.* at 793 (emphasis in original).

[9] In the case before us, we similarly must conclude that Sicroff's goal of protesting the Geography Department's closure did not provide just cause or excuse to calumniate Jett's professional reputation.[5] Not only were his libelous statements legally wrongful, but Sicroff went well beyond the scope of

---

[5]In doing so, however, we affirm that the "just cause and excuse" element has survived *Geiger* in the Ninth Circuit. *See In re Jercich*, 238 F.3d at 1209. While at least one other circuit has read *Geiger* to eliminate the element, *see Miller v. J.D. Abrams Inc.* (*Matter of Miller*), 156 F.3d 598, 606 (5th Cir. 1998), we disagree with that interpretation, which was based on reasoning that conflates the elements of willfulness and malice in contravention of our clear precedents. Although it may be rare to find a just

his legitimate goal to attack Jett by name. When the California Aggie first printed his letter on April 22, 1993, it prudently excised the personalized attacks against Jett and Bahre. In response to this edit, Sicroff sent a second letter, which the newspaper reprinted on April 26, 1993, complaining that "[t]he edited version of my letter that you printed April 22 about the geography department . . . did not at all represent the main point of the letter" and inviting "readers [who] would like the full text of the letter [to] please drop me a note at the geography department." This action demonstrates a specific intent to injure Jett over and above otherwise legitimate protest. For these reasons, the bankruptcy court erred in its interpretation of the phrase "just cause and excuse" and in its conclusion that Sicroff's defamation was not malicious by virtue of its connection to a larger, legitimate purpose. We hold instead that Sicroff's libelous statements were not made with just cause and excuse and that, as a result, they were malicious.

III

**[10]** Because we must conclude that Sicroff's libelous statements constituted a willful and malicious injury, his debt to Jett is not dischargeable. The judgment of the district court is

REVERSED.

---

cause and excuse for defamation, the phrase is hardly without use in other contexts. An assault, for example, may cause a "willful injury" and meet the first three criteria of "malicious," yet be justly excused by self-defense. However, while excuses that are otherwise valid defenses to criminal offenses may well function with similar force under the "malicious" prong of the dischargeability test, such an excuse is not offered here.