FILED

NOT FOR PUBLICATION

FEB 02 2012

SUSAN M SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

UNITED STATES BANKRUPTCY APPELLATE PANEL

OF THE NINTH CIRCUIT

| | | |
|---|---|---|
| In re: | ) | BAP No. AZ-11-1157-JuKiWi |
| | ) | |
| MARK BOSWORTH and LISA ANN BOSWORTH, | ) | Bk. No. 08-03098 |
| | ) | Adv. No. 08-00678 |
| Debtors. | ) | |
| _____ | ) | |
| MARK BOSWORTH; LISA ANN BOSWORTH, | ) | |
| | ) | |
| Appellants, | ) | |
| | ) | |
| v. | ) | M E M O R A N D U M* |
| | ) | |
| TEM HOLDINGS, LLC, | ) | |
| | ) | |
| Appellee. | ) | |
| _____ | ) | |

Argued and Submitted on January 19, 2012
at Phoenix, Arizona

Filed - February 2, 2012

Appeal from the United States Bankruptcy Court
for the District of Arizona

Honorable Sarah Sharer Curley, Bankruptcy Judge, Presiding
_____

Appearances:    Allan D. NewDelman, Esq. argued for appellants
Mark and Lisa Ann Bosworth.
_____

Before:  JURY, KIRSCHER, and WILLIAMS,** Bankruptcy Judges.

---

* This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

** Hon. Patricia C. Williams, Bankruptcy Judge for the Eastern District of Washington, sitting by designation.

-1-

Chapter 11[1] debtors, Mark and Lisa Ann Bosworth (collectively, the "Bosworths" or "Debtors"), appeal the bankruptcy court's decision granting summary judgment in favor of appellee, TEM Holdings, Inc. ("TEM"). Applying the issue preclusion doctrine, the bankruptcy court found that TEM's state court judgment debt against Debtors for their violation of Ariz. Rev. Stat. ("ARS") §33-420 was nondischargeable under § 523(a)(6). TEM has not participated in this appeal. Having conducted an independent de novo review of the record, we AFFIRM.

## I.  FACTS

In 1997, Debtors purchased a small residential property management firm in Phoenix, Arizona. Eventually, their firm began selling government foreclosure properties and managed those properties for investors. As their business grew, they formed, or obtained an interest in, numerous entities, including Property Masters of America, Property Masters Maintenance, and Property Masters Real Estate Trust, LLC (collectively, "Property Masters").

In 2001, Mark Bosworth ("Mark") solicited TEM to engage his services and those of Property Masters in purchasing and managing residential properties in Maricopa County, Arizona. Those services consisted of identifying residential properties available from the Veterans Administration ("VA") and submitting

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. "Rule" references are to the Federal Rules of Bankruptcy Procedure and "Civil Rule" references are to the Federal Rules of Civil Procedure.

bids on behalf of TEM. In turn, TEM could expect to receive a fifteen percent annual return on its cash investment in the properties, as well as an annual average appreciation in the value of the properties of five percent. TEM agreed to utilize the services of Mark and Property Masters, eventually purchasing numerous properties.

In addition, TEM and Property Masters entered into a contract for Property Masters to act as TEM's agent in managing the properties by (1) soliciting renters; (2) managing, maintaining and repairing the residences; (3) collecting rents; and (4) making all necessary mortgage, tax and insurance payments. To allow Property Masters to perform its duties under the property management agreement, TEM executed a limited power of attorney, granting Property Masters the authority to obtain mortgage balances and make mortgage payments on the residences.

At some point, a dispute arose between the principals of TEM and Debtors regarding the various investment properties. In 2004, Debtors filed a complaint against TEM, its principals and others in the Superior Court of Arizona, Maricopa County, captioned Bosworth v. Magelson, Case No. CV2004-023197. This complaint is not part of the record on appeal.[2]

On September 7, 2006, TEM filed a first amended counterclaim against Debtors and a third-party complaint against

---

[2] From what we can tell, the principals of TEM acquired the VA properties from the Bosworths as part of an Internal Revenue Code § 1031 exchange. Subsequently, a dispute arose between the parties regarding those properties.

Property Masters, Debtors, and others,[3] alleging eighteen claims for relief.[4] In the sixteenth claim for relief, TEM alleged that Property Masters and Debtors converted its property through the wrongful collection of sales tax, incurred fraudulent charges for services, and converted renter deposits and prospective purchasers' down payments. In the eighteenth claim for relief, TEM alleged that Property Masters and Debtors had fraudulently altered the power of attorney from TEM by purporting to grant Property Masters unlimited powers in the use of various properties and then recorded the document in violation of ARS §33-420. TEM further alleged that Property Masters and Debtors knew at the time of recording that the power of attorney was forged or fraudulently altered.

After a multi-day trial, the jury found in favor of TEM on the sixteenth claim for relief for conversion and awarded actual damages in the amount of $365,056 and punitive damages of $12,125,000. The jury verdict reflects that liability under this claim for relief was attributed to Property Masters or Mark. The jury also found for TEM on the eighteenth claim for Debtors' violation of ARS §33-420. The jury verdict refers to the "Bosworths" liability for recording six documents against various properties that violated the statute and shows damages awarded in the amount of $407,000.

On January 17, 2008, the state court entered its judgment

---

[3] The other defendants were Larry Plutchak, Leoda Bosworth, Kathryn Paisola, and Dave Zundel.

[4] Most of the claims for relief involved a breach of contract with respect to each of the properties.

in favor of TEM on the sixteenth and eighteenth claims for relief, among others. On the sixteenth claim for relief, the court entered judgment against Mark and Property Masters, jointly and severally, in the amount of $365,000 for actual damages and $12,125,000 for punitive damages, together with $448,880.26 in attorney's fees and costs and interest at ten percent. On the eighteenth claim for relief, pursuant to ARS §33-420, the state court trebled the damage award of $407,000, finding liability in the amount of $1,221,000, plus $448,880.26 in attorney's fees and costs and interest at ten percent.

On March 25, 2008, Debtors filed their chapter 11 petition. TEM filed an adversary complaint seeking a declaration that the state court judgment debts were nondischargeable under § 523(a)(2) and (6). TEM moved for summary judgment asking the bankruptcy court to apply issue preclusion to the state court's findings on the issue of whether the state court judgment debts for conversion and Debtors' violation of ARS §33-420 arose from a willful and malicious injury as required by § 523(a)(6).[5]

Debtors opposed the summary judgment on the grounds that the record as presented did not clearly show that they were liable for conversion and the state statute violation, as other counterdefendants were named. According to Debtors, issue preclusion could not apply because the state court judgment was unclear which individual or entity was liable for the debts. Debtors did not raise any other issues in their opposition.

---

[5] TEM did not pursue the § 523(a)(2) claim in the summary judgment.

Thereafter, the parties stipulated to modify the automatic stay to allow them to petition the state court for clarification on whether both Debtors were liable for the judgment debts. On May 24, 2010, the bankruptcy court entered the order modifying the stay.

The state court issued a Minute Entry dated January 13, 2011, finding that there was no ambiguity in the jury verdict with respect to the conversion claim for relief because it specifically provided the names of the parties liable - Property Masters or Mark. The court concluded that there was no basis to expand the judgment on the conversion claim for relief to Lisa Bosworth ("Lisa"). The state court also found no ambiguity in the jury verdict as to whether both Mark and Lisa were liable for damages arising out of their violation of ARS §33-420. However, the state court found the form of judgment incomplete because it did not identify the Bosworths as judgment debtors. Therefore, the court corrected the judgment to reflect that judgment was against Mark Bosworth and Lisa Bosworth.

After submitting the state court's clarification of the underlying judgment to the bankruptcy court, TEM filed an application with the bankruptcy court for an order to show cause why final judgment should not be entered (the "OSC").[6] TEM reiterated that issue preclusion should apply, but the OSC's focus was on that portion of the judgment pertaining to the

---

[6] Although TEM styled its subsequent pleading as an order to show cause why judgment should not be entered in its favor, its pleading was in effect a continuation of its earlier filed motion for summary judgment.

-6-

state statutory violation. In that regard, TEM argued that the jury unanimously concluded that Mark and Lisa Bosworth fraudulently recorded documents to the detriment of TEM and thus no material questions of fact existed on that claim.

Debtors responded to the OSC, arguing that although the jury found they violated the false document recording statute, there were no findings that they caused a willful and malicious injury within the meaning of § 523(a)(6). Debtors also maintained that the legal fees and costs awarded to TEM in the state court covered thirteen different claims for relief, only two of which were part of the adversary proceeding. Debtors maintained that TEM had not proven what, if any, fees were attributable to Debtors' violation of ARS §33-420.

On March 10, 2010, the bankruptcy court placed its decision granting summary judgment to TEM on the record. The transcript of that hearing is not part of the record on appeal.[7] The minute entry of the hearing reflects that the court relied on Kawaauhau v. Geiger, 523 U.S. 57 (1998) for its decision. On April 4, 2011, the bankruptcy court entered a final judgment

---

[7] Instead, the record contains the transcript for a March 9, 2010 hearing, which reflects that TEM's OSC was on calendar. At that hearing, the court and the parties engaged in an extensive discussion regarding whether the jury's finding that Debtors violated Ariz. Rev. Stat. § 33-420 met the elements for a willful and malicious injury under § 523(a)(6). Debtors' brief mentions portions of the discussion. Although this transcript provides some indication of the court's reasoning that presumably led to its ultimate decision, we are left to speculate regarding the precise legal analysis behind the court's ruling. Debtors' failure to include a transcript, while not fatal to their case since our review is de novo, is a violation of Rule 8009(b) and 9th Cir. BAP R. 8006-1.

finding that TEM was entitled to judgment as a matter of law on its claim against Debtors for their violation of the false document recording statute. The court found the amount of $2,207,444.45 (treble damages of $1,221,000, attorney's fees and costs of $448,880.26, and interest of $537,564.19) excepted from discharge under § 523(a)(6). The judgment further stated that the bankruptcy court found no just reason for delay in the entry of judgment under Civil Rules 54(b) and 58(a)(1).[8] The judgment did not address whether the issue preclusion doctrine applied to TEM's judgment regarding the conversion claim for relief. Thus, that claim is not implicated in this appeal.

## II. JURISDICTION

The bankruptcy court had jurisdiction over this proceeding under 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUE

Did the bankruptcy court properly preclude Debtors from relitigating the issues of willfulness and maliciousness with respect to their violation of ARS §33-420 ?

---

[8] Civil Rule 54(b), made applicable to the Bankruptcy Code by Rule 7054(a), provides in part:

> When an action presents more than one claim for relief . . . or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay . . . .

Civil Rule 58, made applicable to the Bankruptcy Code by Rule 7058, requires every judgment to be set out in a separate document.

-8-

## IV.  STANDARDS OF REVIEW

Our review is de novo.  Ghomeshi v. Sabban (In re Sabban ), 600 F.3d 1219, 1221 (9th Cir. 2010) (grant of summary judgment); Khaligh v. Hadaegh (In re Khaligh), 338 B.R. 817, 823 (9th Cir. BAP 2009) (issue preclusion).

## V.  DISCUSSION

We must decide in this appeal whether the same factual issues were necessarily tried in the state court concerning the nature of Debtors' conduct as those for a willful and malicious injury under § 523(a)(6).[9]

The standards for determining whether a debt falls within the scope of § 523(a)(6) are well-defined.  First, nondischargeable debts under § 523(a)(6) must arise from intentionally inflicted injuries.  Carrillo v. Su (In re Su), 290 F.3d 1140, 1143 (9th Cir. 2002) (citing Kawaauhau v. Geiger, 523 U.S. 57 (1998)).  Second, the "willful" and "malicious" requirements under the statute involve separate analyses. In re Su, 290 F.3d at 1146–47; and see Barboza v. New Form, Inc. (In re Barboza), 545 F.3d 702, 711 (9th Cir. 2008) (recent case reinforcing Su and the requirement of courts to apply a separate analysis for each prong of "willful" and "malicious").  A willful injury is proved by establishing facts that show the debtor had the subjective intent to cause harm or the subjective knowledge that harm was substantially certain to occur.  Su,

---

[9] Section 523(a)(6) states that a discharge under § 727 does not discharge an individual from any debt — "(6) for willful and malicious injury by the debtor to another entity or to the property of another entity."

290 F.3d at 1146.  Proving malicious conduct requires a showing that the debtor: (1) committed a wrongful act; (2) done intentionally; (3) which necessarily causes injury; and (4) was done without just cause or excuse.  Id. at 1146-47.

Parties may invoke the issue preclusion doctrine to preclude relitigation of the elements necessary to prove an exception to discharge under § 523(a)(6).  Grogan v. Garner, 498 U.S. 279, 284 n. 11 (1991).  The party asserting issue preclusion has the burden of proving that all of the threshold requirements have been met.  Kelly v. Okoye (In re Kelly), 182 B.R. 255, 258 (9th Cir. BAP 1995), aff'd, 100 F.3d 110 (9th Cir. 1996).  To sustain this burden, a party must introduce a record sufficient to reveal the controlling facts and the exact issues litigated in the prior action.  Reasonable doubts about what was decided in the prior action should be resolved against the party seeking preclusion.  Id.

In determining the preclusive effect of a state court judgment in nondischargeability proceedings, we apply the issue preclusion rules of the state from which the judgment arose.  28 U.S.C. § 1738; Gayden v. Nourbakhsh (In re Nourbakhsh), 67 F.3d 798, 800 (9th Cir. 1995).  Under Arizona law, the doctrine of issue preclusion bars a party from relitigating an issue identical to one he has previously litigated to a determination on the merits in another action.  Hawkins v. Dept. Economic Sec., 900 P.2d 1236, 1239 (Ariz. 1995).  The elements necessary to invoke the doctrine are:  "(1) the issue is actually litigated in the previous proceeding, (2) there is a full and fair opportunity to litigate the issue, (3) resolution

-10-

of such issue is essential to the decision, (4) there is a valid and final decision on the merits, and (5) there is a common identity of the parties." Id.

Debtors argue that issue preclusion does not apply because the jury never considered whether their conduct was willful and malicious as required by § 523(a)(6). Debtors further argue that there is no requirement for malice under ARS §33-420. Although it is not clear from their briefs, we surmise that Debtors' dispute in this appeal is whether the first or third element for issue preclusion under Arizona law have been met; i.e., whether the issue was actually litigated or whether the resolution of the issue was essential to the jury's decision.

Granted, the elements of a state court action are rarely identical to those for proving a willful _and_ malicious injury. However, issue preclusion will apply if the facts established by the state court judgment show that Debtors' violation of ARS §33-420 was a willful and malicious injury. As discussed below, all of the elements for a willful and malicious injury under § 523(a)(6) are encompassed in the allegations made in the eighteenth claim for relief pertaining to Debtors' violation of the false recording statute, which sounds in tort.

TEM alleged that Debtors caused to be recorded a full and unqualified power of attorney regarding one of more of the identified properties; the power of attorney was forged and/or fraudulently altered to support Debtors' claim to the properties; and Debtors knew at the time of recordation that the power of attorney was forged and/or fraudulently altered. Based on these allegations, the jury found Debtors violated

-11-

ARS §33-420 ("False documents; liability; special action; damages; violation; classification"), which provides in relevant part:

> A.   A person purporting to claim an interest in, or a lien or encumbrance against, real property, who causes a document asserting such claim to be recorded in the office of the county recorder, knowing or having reason to know that the document is forged, groundless, contains a material misstatement or false claim or is otherwise invalid is liable to the owner or beneficial title holder of the real property for the sum of not less than five thousand dollars, or for treble the actual damages caused by the recording, whichever is greater, and reasonable attorney fees and costs of the action.
>
> B.   The owner or beneficial title holder of the real property may bring an action pursuant to this section in the superior court in the county in which the real property is located for such relief as is required to immediately clear title to the real property as provided for in the rules of procedure for special actions. This special action may be brought based on the ground that the lien is forged, groundless, contains a material misstatement or false claim or is otherwise invalid. The owner or beneficial title holder may bring a separate special action to clear title to the real property or join such action with an action for damages as described in this section. In either case, the owner or beneficial title holder may recover reasonable attorney fees and costs of the action if he prevails.
>
> . . .
>
> D.   A document purporting to create an interest in, or a lien or encumbrance against, real property not authorized by statute, judgment or other specific legal authority is presumed to be groundless and invalid.
>
> E.   A person purporting to claim an interest in, or a lien or encumbrance against, real property, who causes a document asserting such claim to be recorded in the office of the county recorder, knowing or having reason to know that the document is forged, groundless, contains a material misstatement or false claim or is otherwise invalid is guilty of a class 1 misdemeanor.

A plain reading shows that the statute requires a knowing

state of mind before sanctions will be imposed. Under subsection (A) a person is liable under the statute only if he or she causes a document to be recorded or filed "knowing or having reason to know[10] the document is . . . forged . . . contains a false claim or is otherwise invalid . . . ." Subsection (E) uses the exact scienter language as subsection (A) and makes the filing of a forged or fraudulent document, such as the power of attorney in this case, a class 1 misdemeanor, a criminal offense.

ARS §33-420 does not define the term "knowing," but the word suggests deliberate or conscious conduct. Thus, the mental state required for liability under the statute is subjective, not objective, and the conduct proscribed intentional, not carelessness. Hence, the liability imposed for a knowing violation of the statute is the equivalent of an intentional injury under § 523(a)(6). See Geiger, 523 U.S. at 61 (§ 523(a)(6) requires deliberate or intentional injury). It follows that one who records a document against property, "knowing" that it is false, intentionally causes harm to the property owner. See In re Ormsby, 591 F.3d at 1206 (willful injury requirement met when debtor has subjective motive to inflict injury or when the debtor believes that injury is substantially certain to result from his own conduct).

Accordingly, we conclude that the factual issues pertaining to Debtors' statutory violation are the same as those necessary

[10] Because TEM alleged that Debtors knew the power of attorney was forged or fraudulently altered, whether they "had reason to know" was not at issue.

-13-

to prove a willful injury under § 523(a)(6).  Those issues were actually litigated and an essential element for imposing liability against Debtors under the state statute.  At the March 9, 2010 hearing, Debtors' attorney more or less conceded that the willful element under § 523(a)(6) was met under the state statute by the requirement of a "knowing" state of mind: "They have willful.  They don't have malicious."  Hr'g Tr. (March 9, 2010) at 26:22-25.  "[T]here could be willful conduct but there's been no establishment that any of the conduct was malicious."  Id. at 27:16-17-28:22-24.  "You have the element of willfulness because that's an intentional act."  Id. at 34:15-16.

We also conclude that the conduct proscribed by ARS §33-420 required TEM to prove the classic elements of a malicious injury under § 523(a)(6).  Suarez v. Barrett (In re Suarez), 400 B.R. 732 (9th Cir. BAP 2009) (noting that the focus in a § 523(a)(6) analysis is on whether the conduct leading to the judgment debt could be for a willful and malicious injury).  Debtors' recordation of a false document against TEM's properties was the wrongful act.  Further, their knowledge of the wrongfulness of their act demonstrates that the recordation was done intentionally on TEM's properties and thus would necessarily cause harm to TEM.  Debtors' conduct was wrongful and malicious because the treble damages[11] awarded under ARS §33-420 are

---

[11] The statute imposes a minimum of $5,000 in damages even if no actual damages have occurred.  Where actual damages have occurred, they must be trebled.  The statute then requires that the higher of the two be awarded, plus attorney's fees and costs. In Wyatt, the Arizona Supreme Court compared the treble damages
(continued...)

-14-

punitive in nature. Wyatt v. Wehmueller, 806 P.2d 870, 875 (Ariz. 1991). Accordingly, the state court judgment, which evidences Debtors' specific intent to injure TEM, proves that Debtors' conduct was "without just cause or excuse." Cf. Murray v. Bammer (In re Bammer), 131 F.3d 788, 793 (9th Cir. 1997) ("As a matter of law, [the debtor's] unprincipled behavior cannot be regarded as 'just.' To do so would be inconsistent with the basic policy of granting discharge of debts, which is to give the 'honest but unfortunate debtor a fresh start.'") (quoting Brown v. Felsen, 442 U.S. 127, 128 (1979)); see also Jett v. Sicroff (In re Sicroff), 401 F.3d 1101, 1107 (9th Cir. 2005) (finding a specific intent to injure negated any proffered just cause or excuse offered by debtor). At the summary judgment stage, once TEM made a prima facie showing that there was no just cause or excuse for Debtors' wrongful acts, Debtors, as the non-moving parties, had the burden of producing evidence that showed the existence of genuine issues of fact for trial on this element. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986). Debtors failed to make such a showing and thus there was no proof concerning an essential element of their case.

In sum, the facts established by the state court judgment demonstrate that all the elements for a willful and malicious injury were actually litigated and essential to the jury's

_____

[11](...continued)
under the statute to punitive damages because both forms of damages serve the purpose of punishing the wrongdoer. The court further observed that Arizona common law requires a showing of malice to obtain punitive damages. 806 P.2d at 875. "Punitive damages serve as a penalty for evil-minded conduct that is something more than gross negligence." Id.

-15-

verdict finding Debtors' liable for damages to TEM based on their violation of ARS §33-420.  Summary judgment should be granted when the record shows that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Civil Rule 56(a) (made applicable to the Code by Rule 7056).  Here, based on issue preclusion, there is no genuine issue as to any material fact.  Therefore, the bankruptcy court properly granted summary judgment for TEM.

As previously mentioned, the bankruptcy court found the attorney's fees and costs and interest on the judgment nondischargeable.  Debtors do not argue in their opening brief how the court erred in making the fees and costs or interest nondischargeable.  Thus, that argument is waived for purposes of this appeal.  Smith v. Marsh, 194 F.3d 1045, 1052 (9th Cir. 1999) ("[O]n appeal, arguments not raised by a party in its opening brief are deemed waived.").

**VI.  CONCLUSION**

For the reasons stated, we AFFIRM.

-16-