
**NOT FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL

# OF THE NINTH CIRCUIT

In re:                              )     BAP No. EC-15-1033-JuDTa
                                    )
GLENN FRED HAGELE, JR.,             )     Bk. No. 14-23470
                                    )
                Debtor.             )     Adv. No. 14-02200
_____)
                                    )
GLENN FRED HAGELE, JR.,             )
                                    )
                Appellant,          )
                                    )
v.                                  )     **M E M O R A N D U M**[1]
                                    )
LAURANELL BURCH,                    )
                                    )
                Appellee.           )
_____)

Argued and Submitted on June 23, 2016
at Sacramento, California

Filed - July 18, 2016

Appeal from the United States Bankruptcy Court for the
Eastern District of California

Honorable Christopher M. Klein, Bankruptcy Judge, Presiding
_____

Appearances:    Emry J. Allen appeared for appellant Glenn Fred
                Hagele, Jr.; Appellee Lauranell Burch appeared
                pro se.
                _____

Before: JURY, DUNN, and TAYLOR, Bankruptcy Judges.

Memorandum by Judge Jury
Concurrence by Judge Dunn

---

[1] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1.

-1-

Appellant Glenn Hagele (Debtor) appeals from the bankruptcy court's judgment holding that his debt to Appellee Lauranell Burch (Burch) is nondischargeable under § 523(a)(6).[2] The bankruptcy court held that the state court prepetition judgment entered in favor of Burch and against Debtor for defamation and unfair trade practices established "willful and malicious injury" under § 523(a)(6). For the reasons stated below, we AFFIRM.

## I.  FACTS

The instant dispute arises out of a prepetition state court action in which Debtor was found to have published defamatory statements against Burch. Burch is a medical research scientist, employed at the National Institute of Environmental Health Scientists in North Carolina, who holds a PhD in molecular biology and genetics. In 2004, Burch's eyes were seriously damaged after she underwent Lasik surgery and, as a result of this incident, she suffers from permanent eye damage. As such, since the surgery, Burch has applied her science background to the study of medical literature relating to the complications that can arise from refractive eye surgeries.[3] Burch has been on numerous television programs devoted to the risks associated with Lasik surgery and generally cautions about

---

[2] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. All "Rule" references are to the Federal Rules of Bankruptcy Procedure and "Civil Rule" references are to the Federal Rules of Civil Procedure.

[3] "Refractive surgery" is a term used to describe surgical procedures that correct common vision problems.

-2-

the dangers involved. Debtor founded and directs the Council for Refractive Surgery Quality Assurance (CRSQA), which is a patient advocacy group. This organization monitors all internet bulletin boards, newsgroups, and other public forums that pertain to refractive eye surgery, such as Lasik. The principal function of CRSQA is to provide a "balanced response" if an anti-refractive surgery advocate makes inflammatory statements.

On December 10, 2007, Debtor filed a defamation complaint against Burch in the Superior Court of Wake County, North Carolina, alleging that Burch was publishing documents containing Debtor's personal information in violation of N.C. Gen. Stat. § 75-66 (State Court Action). On that same day, Debtor obtained an ex parte temporary retraining order. At the preliminary injunction hearing, on December 21, 2007, the superior court denied Debtor's motion for a further injunction and dissolved the temporary restraining order. On April 28, 2008, Burch filed her first amended answer denying all liability, and asserted two counterclaims against Debtor for defamation and unfair trade practices in violation of N.C. Gen. Stat. § 75-1.1 (collectively, the Defamation Claims). On July 13, 2010, Debtor voluntarily dismissed all of his claims against Burch; however, Burch's Defamation Claims remained.

On August 16, 2012, Burch filed a motion for partial summary judgment asking the court to determine liability on the Defamation Claims, leaving the issue of damages to a jury determination at a later time.

On December 2, 2012, the superior court issued an order granting partial summary judgment in favor of Burch (Summary

Judgment Order), finding:

> 1. The evidence in the record establishes that there is no genuine issue of material fact that Hagele made a number of statements about Burch after May 3, 2007 to Burch's employer, in press releases, and over the Internet that were false, including statements that falsely accused her of publishing personal information on the Internet.
>
> 2. The evidence in the record establishes that there is no genuine issue of material fact these statements were of and concerning Burch, published to others, and were defamatory per se because they impeached her in her trade or profession and tended to subject her to ridicule, contempt, or disgrace. Accordingly, these statements constitute actionable defamation as a matter of law. . . .
>
> 3. Further, the case law of North Carolina establishes that defamation 'impeaching a party in its business activities' amounts to a violation of N.C. Gen. § 75-1.1.

On February 26, 2013, a jury unanimously determined that Burch was entitled to compensatory damages in the amount of $150,000.00 and punitive damages in the amount of $200,000.00 (collectively, the Jury Award). On August 9, 2013, the court (1) entered judgment confirming the findings of the Summary Judgment Order and the Jury Award; (2) determined that Burch was entitled to post-judgment interest at the legal rate of 8%; and (3) allowed Burch to recover attorneys' fees incurred in defending against Debtor's claims.

Due to the malicious nature of Debtor's conduct, on August 15, 2013, the court issued a permanent injunction requiring Debtor to cease publishing defamatory statements and to remove any statements which had been published (Permanent Injunction Order). The court based the Permanent Injunction Order's findings and conclusions on the same evidence that was found in the Summary Judgment Order and Jury Award. The Permanent Injunction Order contained findings that:

-4-

1. The evidence at trial in this matter established that Hagele's conduct toward [Burch] was malicious. In particular, his defamation of [Burch] was substantial and included a large number of false statements made over an extended period of time directly to [Burch]'s employer and on numerous forums and websites on the Internet. The evidence at trial further established that Mr. Hagele's defamation of [Dr. Burch] has caused, and is causing, [Burch] to suffer substantial harm. Finally, the evidence at trial established that Mr. Hagele intended [Burch] to be harmed by his conduct.

2. Given the widespread nature of Mr. Hagele's defamation of [Burch] on the Internet, [Burch] is substantially likely to suffer additional harm in the future absent injunctive relief directing Mr. Hagele to remove such defamation. The Court finds and concludes based on the evidence introduced at trial that such additional harm would be substantial and irreparable absent injunctive relief requiring the removal of Mr. Hagele's defamation of her on the Internet.

3. The evidence adduced at trial also established that Mr. Hagele continues to threaten to contact the employers of certain critics of the Lasik procedure, and he continues to threaten to disseminate information about [Burch]. The Court finds and concludes based on the evidence introduced at trial that [Burch] faces a substantial risk of additional harm, and that such additional harm would be substantial and irreparable, absent injunctive relief enjoining Mr. Hagele from further contact with her current employer.

4. The record also evidences further inequitable conduct on Mr. Hagele's part, including his engagement of a purported private investigator who informed Mr. Hagele that he had 'complete access' to the home of a critic of the Lasik procedure who passed along to Mr. Hagele emails that he indicated he had 'intercepted,' including emails both to and from [Burch]. This inequitable conduct, in addition to intentional and malicious nature of Hagele's conduct in engaging in the defamation at issue in this case, further warrants entry of injunctive relief.

On April 3, 2014, Debtor filed a chapter 7 bankruptcy case. Thereafter, Burch filed a timely adversary proceeding seeking to except the Defamation Claims from discharge under § 523(a)(6). On December 5, 2015, Burch filed a summary judgment motion,

arguing that collateral estoppel[4] precluded relitigation of the issues decided by the superior court in the Summary Judgment Order, Jury Award, and Permanent Injunction Order (collectively, the Superior Court Judgments). Burch contended that the Superior Court Judgments determined that Debtor caused "willful and malicious injury" to her under § 523(a)(6).

On January 15, 2016, the bankruptcy court granted Burch's motion for summary judgment, finding the debt to be nondischargeable under § 523(a)(6). In doing so, the court relied heavily on Jett v. Sicroff (In re Sicroff), 401 F.3d 1101 (9th Cir. 2005), for the notion that, in a defamation suit, there can be no "just cause or excuse" for an intentional lie. Debtor timely appeals to this court.

## II. JURISDICTION

The bankruptcy court had jurisdiction over this proceeding under 28 U.S.C. §§ 1334 and 157(b)(2)(I). We have jurisdiction under 28 U.S.C. § 158.

## III. ISSUE

Whether the bankruptcy court erred in granting summary judgment for Burch on the basis of issue preclusion.

## IV. STANDARDS OF REVIEW

We review summary judgment motions de novo. Gertsch v. Johnson & Johnson (In re Gertsch), 237 B.R. 160, 165 (9th Cir. BAP 1999). De novo review requires the Panel to independently

---

[4] Although Burch premised her arguments on the application of "collateral estoppel" this Panel, following the trend of most federal courts, uses the more precise term "issue preclusion" when considering the preclusive effect of a prior court judgment.

-6-

review an issue, without giving deference to the bankruptcy court's conclusions. First Ave. W. Bldg., LLC v. James (In re Onecast Media, Inc.), 439 F.3d 558, 561 (9th Cir. 2006).

"We review rulings regarding rules of res judicata, including claim and issue preclusion, de novo as mixed questions of law and fact in which legal questions predominate." Khaligh v. Hadaegh (In Khaligh), 338 B.R. 817, 823 (9th Cir. BAP 2006), aff'd, 506 F.3d 956 (9th Cir. 2007) (citing Robi v. Five Platters, Inc., 838 F.2d 318, 321 (9th Cir. 1988)). "Once it is determined that preclusion doctrines are available to be applied, the actual decision to apply them is left to the trial court's discretion." Id. Such discretion is exercised in accordance with state law, when state preclusion law controls. Gayden v. Nourbakhsh (In re Nourbakhsh), 67 F.3d 798, 800 (9th Cir. 1995).

Under the abuse of discretion standard of review, we first "determine de novo whether the [bankruptcy] court identified the correct legal rule to apply to the relief requested." United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009)(en banc). If the bankruptcy court identified the correct legal rule, we then determine under the clearly erroneous standard whether its factual findings and its application of the facts to the relevant law were: "(1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." Id. (internal quotation marks omitted).

## V.    DISCUSSION

**A.    Summary Judgment Standards**

A trial court will appropriately grant summary judgment "if

-7-

the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Civil Rule 56(c)(2), as incorporated by Rule 7056. The trial court does not weigh evidence but merely determines whether material facts remain in dispute. Covey v. Hollydale Mobilehome Estates, 116 F.3d 830, 834 (9th Cir. 1997). A dispute is genuine if there is sufficient evidence for a reasonable fact finder to hold in favor of the non-moving party, and a fact is "material" if it might affect the outcome of the case. Far Out Prods., Inc. v. Oskar, 247 F.3d 986, 992 (9th Cir. 1997).

The plaintiff carries the initial burden of production and the ultimate burden of persuasion that there is "no genuine issue as to any material fact." Civil Rule 56(c). To meet this burden, the plaintiff must provide conclusive evidence of "a showing sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." S. Cal. Gas Co. v. City of Santa Ana, 336 F. 3d 885, 888 (9th Cir. 2003). The burden can shift to the non-moving party, who must "go beyond the pleadings" and by his or her own affidavits, depositions, answers to interrogatories, or admissions on file, designate specific facts to demonstrate that there is a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

**B.    Willful and Malicious Injury:  § 523(a)(6)**

Section 523(a)(6) provides in relevant part: "(a) A discharge under section 727 . . . of this title does not

-8-

discharge an individual debtor from any debt — . . . (6) for willful and malicious injury by the debtor to another entity or to the property of another entity[.]"

In the Ninth Circuit, willfulness and malice are analyzed separately and are not to be conflated. See Carrillo v. Su (In re Su), 290 F.3d 1140, 1146 (9th Cir. 2002). Willful injury requires an inquiry into the subjective state of mind of the debtor. In re Su, 290 F.3d at 1145. The standard is met when it is shown that the debtor either had a subjective motive to inflict injury or the debtor believed that injury was substantially certain to occur. Id. However, it is not enough to merely prove that the debtor acted intentionally and caused an injury. Kawaauhau v. Geiger, 523 U.S. 57, 61 (1998). Malicious injury requires: (1) a wrongful act, (2) done intentionally, (3) which necessarily causes injury, and (4) is done without just cause or excuse. Petralia v. Jercich (In re Jercich), 238 F.3d 1202, 1208 (9th Cir. 2001).

It is well established that issue preclusion may be applied in exception to discharge proceedings. Grogan v. Garner, 498 U.S. 279, 284 (1991). "Issue preclusion 'bars successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim.'" New Hampshire v. Maine, 532 U.S. 742, 748 (2001) (quoting Hasnain v. Chadd (In re Hasnain), 2012 WL 5471453, at *7 (9th Cir. BAP Nov. 9, 2012).

**C.  Preclusion law of North Carolina**

Federal Courts must refer to the preclusion law of the

-9-

state in which the judgment was rendered in order to determine the preclusive effect of a state court judgment. <u>Marrese v. Am. Acad. of Orthopaedic Surgeons</u>, 470 U.S. 373, 380 (1985); <u>Diruzza v. Cty. of Tehama</u>, 323 F.3d 1147, 1152 (9th Cir. 2003). Therefore, North Carolina law on issue preclusion applies. The elements for issue preclusion under North Carolina law are:

> (a) a prior suit resulting in a final judgment on the merits; (b) identical issues involved; (c) the issue was actually litigated in the prior suit and necessary to the judgment; and (d) the issue was actually determined.

<u>Royster v. McNamara</u>, 218 N.C.App. 520, 525-26 (2012); <u>McDonald v. Skeen</u>, 152 N.C.App. 228, 230 (2002).

**1. Prior suit resulting in a final judgment on the merits**

The first prong of issue preclusion requires a final judgment on the merits. Under North Carolina law, a final judgment is one that determines the entire controversy between the parties, leaving nothing to be decided in the trial court. <u>Ratchford v. C.C. Mangum, Inc.</u>, 150 N.C.App. 197, 199 (2002). The parties in the present case do not dispute that a final judgment on the merits was entered in the state court. Thus, the first element is satisfied.

**2. Identical issues involved**

The next and most critical prong requires comparison of the issue presented in the prior state court action that resulted in the defamation judgment with the issues presented in the current case, whether Debtor acted willfully and maliciously. Under North Carolina law, the term defamation applies to the two distinct torts of libel and slander. A claim of libel per se that defames a party in its business activities may be the basis

-10-

of a claim for unfair and deceptive trade practices under N.C. G.S. 75-1.1. See Ellis v. N. Star Co., 326 N.C. 219, 225-26 (1990). Therefore, the proof required for each claim is identical. Libel per se is a publication which, when considered alone without explanatory circumstances, tends to impeach a person in that person's trade or profession, or otherwise tends to subject one to ridicule, contempt or disgrace. Renwick v. News and Observer Pub. Co., 310 N.C. 312 (1984).

In the Summary Judgment Order the North Carolina court found that statements made by Debtor about Burch were defamatory per se because the "statements published by [Debtor] impeached Burch in her trade or profession and tended to subject her to ridicule, contempt, or disgrace." To give this conclusion preclusive effect, however, we must find that the state court specifically made a finding that Debtor acted both willfully and maliciously under federal law when publishing the defamatory statements for a determination that the debt is nondischargeable under § 523(a)(6).

### 3.    The willful element

As laid out above, the "willful" prong requires an inquiry into the subjective state of mind of the debtor; the standard is met when the debtor either had a subjective motive to inflict injury or believed that injury was substantially certain to occur. In re Su, 290 F.3d at 1145. Considering together the Summary Judgment Order, Permanent Injunction Order, and Jury Award, we find the "willful" requirement satisfied.

The Summary Judgment Order included findings that Debtor made a number of statements about Burch to Burch's employer in

-11-

press releases and over the Internet that were false, including statements that falsely accused her of publishing his personal information on the Internet. Moreover, the Permanent Injunction Order found that: (a) Debtor's conduct toward Burch was malicious; (b) Debtor's defamation was substantial and included a large number of false statements made over an extended period of time directly to Burch's employer and on numerous forums and websites on the Internet; (c) Debtor threatened to contact the employers of certain critics of the Lasik procedure, and threatened to disseminate information about Burch; (d) Debtor has caused, and is causing, Burch to suffer substantial harm and that Debtor intended Burch to be harmed by his conduct; and, most significantly, (e) ". . . the evidence at trial established that [Debtor] intended [Burch] to be harmed by his conduct."

These findings show that Debtor intended to harm Burch as required by the willful prong in In re Su. Therefore, because Debtor knowingly published defamatory statements against Burch with the actual intent to cause injury to her, Debtor's conduct was "willful" as that term is contemplated by § 523(a)(6).

**4. The malicious element**

As defined above, malicious injury requires (a) a wrongful act, (b) done intentionally, (c) which necessarily causes injury, and (d) done without just cause or excuse. In re Jercich, 238 F.3d 1208. Because the Summary Judgment Order found Debtor committed defamation, the first two prongs are satisfied as a matter of law. See Jeff v. Sicroff (In re Sicroff), 401 F.3d 1101, 1106 (9th Cir. 2005) ("A libelous act, by its nature, is self-evidently wrongful and is

-12-

committed by an intentional act of publication."). The third prong is likewise satisfied because Debtor's statements were directed at Burch's professional reputation, which would substantially harm her in her occupation. Indeed, the Permanent Injunction Order was issued based on the harm caused by the statements being "substantial and irreparable." Therefore, the first three elements of malice are directly provided by the libel determination. The fourth element, "without just cause or excuse," is less straightforward since by its nature the lack of good cause or excuse is not proved by the plaintiff with affirmative evidence; just cause or excuse is a defense for the debtor.

In opposing the summary judgment, Debtor asserted that there exists a triable issue of material fact on whether the state court necessarily decided the "just cause or excuse" element. Debtor first claimed that the burden of proof was on Burch to show just cause or excuse.[5] Next, Debtor asserted Burch failed to prove that there was neither a just cause nor an excuse for Debtor's conduct. In ruling on the motion, the bankruptcy court relied on In re Sicroff for the conclusion that all defamation would be without just cause or excuse because there can be no just cause or excuse for an intentional lie; thus, the bankruptcy court held that Burch was entitled to judgment as a matter of law.

We do not read In re Sicroff so broadly, nor do we need to

---

[5] This argument is nonsensical since Burch could never have the burden to prove Debtor's defense.

-13-

rely on it to reach a decision in this case. In In re Sicroff, the Ninth Circuit was presented with the issue of whether to give the state court libel judgment preclusive effect under § 523(a)(6). The court found the first three elements of "maliciousness" easily satisfied where a university professor was defamed by an intentional act of publication that was directed at the professor's professional reputation. Id. at 1106. Based on an analysis of the record of that case the circuit court ruled there could be no just cause or excuse because the actions were taken to injure the professor's reputation. Id. at 1107. The bankruptcy court here took this conclusion as a per se rule that there could never be just cause or excuse for defamation. On our record, we need not rely on a per se rule.

Although in general a plaintiff has the burden to prove by a preponderance of the evidence that the debt arose from willful and malicious conduct, In re Jercich, 238 F.3d at 1208, just cause or excuse is in the nature of an affirmative defense. Jercich by implication supports the position that a debtor must first put forth the just cause or excuse. In In re Jercich, the Ninth Circuit was presented with the issue of giving a pre-petition state court judgment for unpaid wages preclusive effect under § 523(a)(6). Id. at 1209. After the court concluded that the debtor's conduct was "malicious," the court stated that the debtor "pointed to" no just cause or excuse. Id. This statement implies that a debtor carries the burden of going forward on the final element of malice which may be satisfied by the debtor affirmatively asserting "cause or excuse." Debtor

-14-

here did not meet this burden.

In his responding papers, Debtor argued that he had just cause to file the state court complaint against Burch because he believed his allegations to be true. Therefore, he asserts a material disputed fact as to that issue to defeat summary judgment. This argument misses the mark. The defamation judgment was not premised on his state court complaint, but rather the independent defamatory statements alleged by Burch in her cross-complaint. Nowhere in his opposition does Debtor assert a just cause or excuse for those defamatory statements. This failure by Debtor to put forth the necessary evidence of just cause or excuse makes determination of the summary judgment motion against him proper. With this final prong in place, the malicious element is met.

**5. The issue was actually litigated in the prior suit and necessary to the judgment.**

The third prong requires the matter to be "actually litigated," or stated another way, the parties must have litigated whether Debtor engaged in willful and malicious conduct against Burch. Matters are typically "actually litigated" in North Carolina when the parties must have "enjoyed a full and fair opportunity to litigate that issue in the earlier proceeding." Hillsboro Partners, LLC v. City of Fayetteville, 738 S.E.2d 819 (2013).

There is no doubt that this issue has been actually litigated and the parties had a full and fair hearing. The issues before the bankruptcy court were the central issues that were litigated and evaluated by the state court jury and judge

-15-

in order to determine whether Hagele was liable for the Defamation Claims and whether Burch should be entitled to punitive damages.  Thus, this requirements is established.

**6.    The issue was actually determined.**

As to the last prong, the Summary Judgment Order, Injunction Order, and Jury Award all establish that the court made detailed findings on the issues at hand.  Thus, this requirement is established.

In sum, the bankruptcy court did not err in applying issue preclusion to the Superior Court judgment with regard to all the elements of willful and to a finding of malice except for the just cause or excuse defense of malicious.  Because Debtor failed to raise a material issue of disputed fact on this last element, summary judgment for Burch ruling that the Superior Court Judgment was nondischargeable under § 523(a)(6) was proper.

**D.    Attorneys' fees as a measure of nondischargeable damage**

Debtor asserts that because the attorneys' fees awarded were based on the unfair competition claim, they are not nondischargeable as based on willful and malicious conduct.

We disagree.  Under North Carolina law, a claim of libel per se that defames a party in its business activities may be the basis of a claim for unfair and deceptive trade practices. See Ellis v. N. Star Co., 326 N.C. at 225-26.  The record shows that the basis for the unfair and deceptive trade practices violation was the very same libel per se that we concluded was willful and malicious.  Section 75-16 of the North Carolina deceptive trade practices statute provides for an award of

attorney fees to a plaintiff who prevails on an unfair trade practice claim, as did Burch here. Under the holding of <u>Cohen v. de la Cruz</u>, 523 U.S. 213 (1998), fees are nondischargeable if they are recoverable as an element of damages in a non-bankruptcy court for the claim which is found to be nondischargeable. Therefore, because North Carolina law allows the fees, they are properly included in the nondischargeable judgment.

## VI. CONCLUSION

For the reasons stated above, we AFFIRM.

Concurrence begins on next page.

DUNN, Bankruptcy Judge, Concurring:

I join in the disposition of this appeal by the Panel but write separately to point out my limited disagreement with where the majority goes in Part C.4. of the Discussion concerning the burden of proof to establish the fourth element of "malice," i.e., "without just cause or excuse" for purposes of § 523(a)(6).

This Panel has held that a creditor seeking to except a debt from a debtor's discharge bears the burden of proof by a preponderance of the evidence to establish "each element of the exception to dischargeability." See, e.g., First Del. Life Ins. Co. v. Wada (In re Wada), 210 B.R. 572, 575 (9th Cir. BAP 1997), citing Grogan v. Garner, 498 U.S. 279 (1991). In Jett v. Sicroff (In re Sicroff), 401 F.3d 1101 (9th Cir. 2005), the Ninth Circuit reversed the bankruptcy court's judgment, affirmed on appeal by the district court, determining that a creditor's libel judgment against the debtor was dischargeable. In analyzing the record with respect to malice, the circuit concluded that, "Having satisfied the first three elements of 'malicious injury' [for § 523(a)(6) purposes], to prevail, Jett [the creditor claimant] **must demonstrate by a preponderance of the evidence that Sicroff [the debtor] published his statements 'without just cause or excuse**.'" Id. at 1106 (emphasis added). It concluded that Jett had met that burden. Id. at 1106-07.

I recognize the force of the majority's argument that by its nature, "just cause or excuse" should not be the plaintiff creditor's burden to bear, as it is in the nature of an affirmative defense to be raised by the debtor defendant.

-1-

However, in this appeal I don't think that we need to reach that legal conclusion. In the Summary Judgment Order, the North Carolina superior court held that there was no genuine issue of material fact in the record before it that Debtor made a number of false statements "to Burch's employer, in press releases, and over the Internet" that falsely accused Burch of publishing his personal information on the Internet. At oral argument, counsel for the Debtor admitted that the Debtor did not submit any evidence of a "just cause or excuse" for his behavior during the course of the North Carolina legal proceedings. On the record before us, I conclude that Burch satisfied any burden of proof she had to meet to establish that Debtor's conduct that resulted in her claim against him was not absolved by any "just cause or excuse," and I join my colleagues in affirming the bankruptcy court's decision.